## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| John St. Rose, Monrose Loctar, and Derrick James, individually and on behalf of all others similarly situated, | 3:19-cv-117 |
| | **Class Action** |
| *Plaintiffs,* | **Jury Trial Demanded** |
| v. | |
| Heavy Materials, LLC, Spartan Concrete Products, LLC, and Warren Mosler, | |
| *Defendants.* | |

## <u>COMPLAINT</u>

Plaintiffs Monrose Loctar, Derrick James, and John St. Rose, on behalf of themselves and all others similarly situated, bring this action for treble damages and injunctive relief under the antitrust laws of the United States and the U.S. Virgin Islands; demand a trial by jury; and make the following allegations based on information, belief, and investigation of counsel:

1.      Defendants and their co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by territorially dividing the U.S. Virgin Islands' markets for ready-mix concrete and agreeing not to compete. This combination and conspiracy was *per se* unlawful.

2.      As a result of the unlawful conduct of defendants and their co-conspirators, Plaintiffs and other members of the Class (as defined below) paid artificially inflated prices for ready-mix concrete and suffered financial injury. Plaintiffs seek the protection of the Court, on their behalf and on behalf of the Class, to recoup overpayments and all lawful damages associated with Defendants' unlawful conduct in the U.S. Virgin Islands, including statutory penalties, treble damages, and punitive damages, according to proof.

Complaint
*St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*

## PARTIES

3.      Plaintiff Monrose Loctar is a citizen of the U.S. Virgin Islands and resides on St. Croix.

4.      Plaintiff Derrick James is a citizen of the U.S. Virgin Islands and resides on St. Croix.

5.      Plaintiff John St. Rose is a citizen of the U.S. Virgin Islands and resides on St. Croix.

6.      Defendant Spartan Concrete Products, LLC ("Spartan") is a limited liability company registered in the U.S. Virgin Islands, and doing business in the Territory.

7.      Defendant Heavy Materials, LLC ("Heavy Materials") is a limited liability company registered in the U.S. Virgin Islands, and doing business in the Territory.

8.      Defendant Warren Mosler is a citizen and resident of St. Croix, U.S. Virgin Islands.

## JURISDICTION & VENUE

9.      Plaintiffs bring this action under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, *et seq.*, the Clayton Antitrust Act, 15 U.S.C. §§ 12, *et seq.*, and the Virgin Islands Anti-Monopoly Law, 11 V.I.C. §§ 1501, *et seq.*

10.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, as well as Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15.

11.      Venue is this District is proper pursuant to 28 U.S.C. § 1391, as well as Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 & 22. The combination and conspiracy charged in this Complaint were carried out in substantial part within this District. Defendants reside and/or transact business within this District, and the trade and commerce described in this Complaint were carried out in substantial part within this District.

## DEFINITIONS

12.      As used herein, the following terms have the meanings set forth below:

a.      "Class" includes all persons in the United States Virgin Islands who purchased ready-mix concrete or aggregate directly from any defendant at any time during the Class

Complaint
*St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*

Period.

b.      "Class Period" means the period from at least December 2013 to October 2015.

c.      "Ready-mix concrete" means a product comprised of cement, sand, gravel, water, and occasionally other additives. Ready-mix concrete can be made on demand and shipped to work sites by concrete mixer trucks.

d.      "Persons" means any individual, partnership, corporation, non-profit, association, or other business or legal entity.

### FACTS

13.      From 2010 to 2013, the defendants Heavy Materials and Spartan competed aggressively with one another for the sale of ready-mix concrete in the U.S. Virgin Islands.

14.      During this period of aggressive competition, Defendants engaged in what they describe as a "price war," in which they each continuously lowered their prices despite operating at mutual losses.

15.      This "price war" was a deliberate strategy by Mosler, a member of Spartan. Mosler openly expressed his desire to corner the concrete market in the U.S. Virgin Islands and deliberately engaged in a strategy to operate Spartan to maximize market share.

16.      Over the years, Warren Mosler, member and/or manager of defendant Spartan, made several overtures to Heavy Materials to sell. But at every occasion, Heavy Materials rebuffed Mosler's overtures. Each time Heavy Materials rebuffed an overture, Spartan (at Mosler's direction) lowered its prices further.

17.      In the fall of 2013, the pattern changed when representatives of Heavy Materials and Spartan began negotiating a truce in which the parties agreed to divide territories, with Mosler (through Spartan) taking St. Croix and Heavy Materials taking St. Thomas.

18.     In an email of October 24, 2013, Mosler commented on the state of negotiations: "Don't see how we are giving anything. I get STX." He continued: "I get STX with good prices. STT is a loser for us, so no loss there."

19.     The negotiations between Mosler (through Spartan) and Heavy Materials arrived at an agreement in restraint of trade. On December 15, 2013, Heavy Materials and Spartan entered into two written agreements: the Requirements Supply Agreement and the Assignment of Lease.

20.     One of the terms of the Requirements Supply Agreement required Heavy Materials and Spartan to cease competing with one another for the sale of concrete in St. Thomas and St. Croix for at least 5 years and provided for an option for an additional 10 years of noncompetition.

21.     Shortly after the Requirements Supply Agreement was signed, Heavy Materials confirmed the arrangement in an email from Kurt Nose to Doug Gurlea: "This past week Spartan Concrete and Heavy Materials reached an agreement in order to split up the concrete markets in St. Thomas and St. Croix." He continued to describe the agreement: "Right now Spartan has pulled out of the concrete business in St. Thomas and, in turn, Heavy Materials has pulled out of the concrete market in St. Croix."

22.     Michael Pede, the operating manager of Spartan, agreed in sworn trial testimony that this was the explicit arrangement: Heavy Materials took the market in St. Thomas; Spartan took the market in St. Croix; and neither would interfere in the other's market.

23.     This agreement and corresponding reciprocal withdrawal left Heavy Materials as the only supplier of ready-mix concrete on St. Thomas and Spartan as the only supplier of ready-mix concrete on St. Croix.

24.     Further, it left Heavy Materials as the only seller/distributor of aggregates on both St. Thomas and St. Croix.

25.     After this reciprocal withdrawal in December of 2013, Defendants immediately and

Complaint
*St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*

significantly raised their prices for ready-mix concrete on St. Croix and St. Thomas, respectively.

26.     Prices for ready-mix concrete rose steadily throughout the Class Period as a direct result of Defendants' illegal agreement and conspiracy.

27.     Spartan was able to increase its prices on St. Croix because it was no longer in competition with Heavy Materials. And, similarly, Heavy Materials was able to raise its prices on St. Thomas because it no longer was in competition with Spartan.

28.     Throughout this time, one or more of the Plaintiffs purchased ready-mix concrete from each Defendants prior to October of 2015.

29.     These business activities of Defendants substantially hampered trade and commerce in the Territory.

30.     The ready-mix concrete produced and sold by each Defendants is comparable to and interchangeable with the ready-mix concrete produced and/or sold by other Defendants.

31.     There are high barriers that make entry into the ready-mix concrete business difficult. Those barriers include high capital costs and regulatory requirements. Moreover, the typical those barriers are particularly pronounced in the Territory, as the distance from the U.S. mainland creates great obstacles to maintaining a supply-chain.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action on behalf of themselves and, under Federal Rules of Civil Procedure 23(b)(3), as representatives of the following Class:

> "All persons who purchased ready-mix concrete or aggregate directly
> from any defendant at any time during the Class Period."

33.     The Class numbers at least in the hundreds rendering joinder of all members of the Class impracticable.

34.     Plaintiffs qualify as members of the Class. Their claims are typical of the claims of

other Class members. Plaintiffs' claims arise from the same conduct giving rise to the claims of the Class. And Plaintiffs seek relief common to the Class.

35.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are represented by competent counsel experienced in the prosecution of class action antitrust litigation. Plaintiffs' interests coincide with, and are not antagonistic to, those of the Class.

36.    Questions of law and fact common to all class members predominate over any questions affecting only individual Class members. Predominating common questions include, without limitation:

    a.    Whether Defendants and their co-conspirators conspired to divide the ready-mix concrete market in the U.S. Virgin Islands by geography;

    b.    The scope and extent of the conspiracy;

    c.    Whether the conspiracy affected the prices of ready-mix concrete paid by Class members during the Class Period;

    d.    The members of the conspiracy;

    e.    The time period during which the conspiracy existed;

    f.    Whether the combination, agreement, or conspiracy violated the law;

    g.    Whether Plaintiffs and other members of the Class are entitled to declaratory or injunctive relief;

    h.    The appropriate measure of statutory damages and jury verdict damages sustained by Plaintiffs and other members of the Class; and

    i.    Whether Defendants and their co-conspirators affirmatively and fraudulently concealed the conspiracy.

37.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Indeed, it is the only realistic method for litigating the large number

of claims at issue herein. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently. There are no difficulties likely to be encountered in the management of this lawsuit that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

## VIOLATIONS ALLEGED

### COUNT 1 – VIOLATION OF THE SHERMAN & CLAYTON ANTITRUST ACTS

38.     Plaintiffs and members of the Class incorporate the above factual allegations as if fully set forth herein.

39.     Defendants and their co-conspirators engaged in a continuing combination and conspiracy in an unreasonable restraint of trade and commerce in ready-mix concrete in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

40.     This combination and conspiracy consisted of an agreement, understanding, and concerted action among Defendants and their co-conspirators to allocate and divide customers, territories, supplies, sales, and markets, both functionally and geographically, of ready-mix concrete in the U.S. Virgin Islands.

41.     Territorial split agreements are condemned under antitrust law *per se* because they have a "pernicious effect on competition and lack [] any redeeming virtue . . . ." *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5 (1958).

42.     The combination and conspiracy was the product of defendant Mosler's active and knowing engagement in a scheme to achieve anticompetitive ends and exert his influence so as to shape the intentions of defendants Spartan and Heavy Materials.

43.     As a result of the combination and conspiracy between Defendants and their co-conspirators, prices of ready-mix concrete were artificially increased.

### COUNT 2 – VIOLATION OF THE U.S. VIRGIN ISLANDS ANTI-MONOPOLY LAW

44.     Plaintiffs and members of the Class incorporate the above factual allegations as if fully set forth herein.

45.     Defendants and their co-conspirators engaged in a continuing combination and conspiracy in an unreasonable restraint of trade and commerce in ready-mix concrete in violation of Section 3 of the U.S. Virgin Islands Anti-Monopoly Law, 11 V.I.C. § 1503(1)(c).

46.     This combination and conspiracy consisted of an agreement, understanding, and concerted action among Defendants and their co-conspirators to allocate and divide customers, territories, supplies, sales, and markets, both functionally and geographically, of ready-mix concrete in the U.S. Virgin Islands.

47.     This combination and conspiracy is a *per se* violation of the Virgin Islands Anti-Monopoly Law.

48.     As a result of the combination and conspiracy between Defendants and their co-conspirators, prices of ready-mix concrete were artificially increased.

### COUNT 3 – V.I. COMMON LAW "PARTICIPATING AGENT" LIABILITY
(as to defendant Mosler only)

49.     Plaintiffs and members of the Class incorporate the above factual allegations as if fully set forth herein.

50.     At all times relevant to action, defendant Mosler was the manager of Spartan. As the manager of Spartan, Mosler was also Spartan's agent.

51.     Mosler had the actual and apparent authority to negotiate and execute business transactions with third-parties. Mosler had the actual and apparent authority to negotiate and execute the Requirements Supply Agreement and the Assignment of Lease.

52.     The Requirements Supply Agreement and the Assignment of Lease were both

Complaint
*St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*

unlawful and tortious under federal Virgin Islands law.

53.     Mosler's actions actively and directly participated in the negotiations, framing, execution, and enforcement of the unlawful and tortious Requirements Supply Agreement and the Assignment of Lease, which contracts comprised a *per se* illegal agreement to split the markets for ready-mix concrete in the Territory.

54.     As a result of Mosler's conduct as a participating agent, prices of ready-mix concrete were artificially increased.

## DAMAGES TO PLAINTIFFS AND MEMBERS OF THE CLASS

55.     As a direct result of this unlawful conduct, prices for ready-mix concrete sold by Defendants and their co-conspirators were fixed and maintained at artificially high and noncompetitive levels.

56.     Plaintiffs and members of the Class were not able to purchase ready-mix concrete at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for ready-mix concrete than they would have paid in a free, open, and competitive market.

57.     Defendants and their co-conspirators were able to maintain their monopolistic prices because of the high barriers to entry into the ready-mix concrete business.

58.     Plaintiffs cannot state at this time the precise amount of damages sustained by them and the Class. A precise determination of damages will require discovery from the books and records of Defendants and their co-conspirators. Plaintiffs allege that the damages are substantial.

## NOTICE OF PUNITIVE DAMAGES

59.     The actions of Defendants and their co-conspirators in conspiring and creating an anticompetitive and artificial monopoly market for ready-mix concrete in the U.S. Virgin Islands, as well as their unfair and deceptive trade practices, were outrageous, done with evil motive, and

recklessly indifferent to the rights of Plaintiffs and members of the Class.

60.    Anti-competitive agreements and unfair and deceptive trade practices create a profound and pervasive negatively effect on all consumers by higher prices. Further, the Defendants' business practices rob profits from business that operate lawfully in the Territory, making the opening and growth of new business, operating lawfully, much more difficult and burdensome.

61.    Anti-competitive agreements and unfair and deceptive trade practices undermine consumer confidence in the Virgin Islands, reducing investment in the Virgin Islands by lawfully operating business and individuals.

62.    Punitive damages are appropriate to deter and punish this willful and intentional conduct, which effects all residents and businesses in the Territory negatively. The deterrence of punitive damages will discourage such future wrongful business practices by others.

### FRAUDULENT CONCEALMENT

63.    Throughout the Class Period, Defendants and their co-conspirators intended to and did affirmatively and fraudulently conceal their wrongful conduct and the existence of their unlawful combination and conspiracy from Plaintiffs and other members of the Class, and intended that their communications with each other and their resulting actions be kept secret from Plaintiffs and other class members.

64.    Plaintiffs were reasonably diligent in filing this Complaint upon discovery. They had no knowledge of the wrongful conduct alleged herein or of any of the facts that might have led to discovery thereof until the summer of 2019. And they were unaware that prices for ready-mix concrete had been artificially raised and maintained as a result of the wrongful conduct as alleged in this Complaint until the summer of 2019.

65.    Reasonably prudent consumers could not have learned of the anti-competitive agreement prior to July 2017, when the existence of the unlawful conspiracy was revealed at trial in

the matter of *Spartan Concrete Products, LLC v. Argos USVI Corp.*, Civ. No. 3:15-cv-00004 (D.V.I. Jul.

17, 2017). The transcript of the trial was not publicly available until on or about August 14, 2017.

## JURY TRIAL DEMANDED

66.     Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules Civil

Procedure, of all issues so triable.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request

the following relief herein:

A.      That the Court determine that this action may be maintained as a class action under

Rule 23(b)(3) of the Federal Rules of Civil Procedure; that the Court determine that Plaintiffs are

adequate and appropriate representatives of the Class; that the Court designate Plaintiffs' attorneys as

lead counsel for the Class; and that the Court direct that the best notice practicable under the

circumstances be given to members of the Class pursuant to Rule 23(c)(2).

B.      That the Court adjudge and decree that defendants and their co-conspirators engaged

in an unlawful combination and conspiracy in violation of the Sherman Anti-Trust Act, the Clayton

Antitrust Act, and the U.S. Virgin Islands Anti-Monopoly Law.

C.      That the Court enter judgment for Plaintiffs and the Class against defendants and their

co-conspirators and each of them, jointly and severally, for three times the amount of damages

sustained by Plaintiffs and the Class as allowed by law, together with the costs of this action, including

reasonable attorneys' fees.

D.      That defendants and their co-conspirators be subject to an award of punitive damages.

E.      That the Court grant such additional relief as may be deemed just and proper.

Complaint
*St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*

**DATED:**        December 19, 2019                              Respectfully submitted,


                                                                                     s/
                                                                        _____
                                                                        Korey A. Nelson, Esq. (V.I. Bar No. 2012)
                                                                        BURNS CHAREST LLP
                                                                        365 Canal Street, Suite 1170
                                                                        New Orleans, LA 70130
                                                                        Telephone: (504) 799-2845
                                                                        Facsimile: (504) 881-1765
                                                                        knelson@burnscharest.com
                                                                        mhenry@burnscharest.com

                                                                        J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
                                                                        THE PATE LAW FIRM
                                                                        P.O. Box 890, St. Thomas, USVI 00804
                                                                        Telephone: (340) 777-7283
                                                                        Cellular: (340) 690-7283
                                                                        Facsimile: (888) 889-1132
                                                                        pate@sunlawvi.com
                                                                        SunLawVI@gmail.com