# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JOHN ST. ROSE, MONROSE LOCTAR, and DERRICK JAMES, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civil No. 2019-117 |
| vs. | )<br>)<br>) |
| HEAVY MATERIALS, LLC, SPARTAN CONCRETE PRODUCTS, LLC, and WARREN MOSLER, | )<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

Before the Court is "Plaintiffs' Conditional Motion for Leave to Amend the Complaint to Set Forth Additional Facts Regarding Fraudulent Concealment." [ECF 28]. Defendants Warren Mosler and Spartan Concrete Products, LLC opposed the motion[1] [ECF 33] and plaintiffs replied [ECF 35].

### I. BACKGROUND

Plaintiffs filed their complaint on December 19, 2019, alleging, for themselves and on behalf of a purported class, that "Defendants and their co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by territorially dividing the U.S. Virgin Islands' markets for ready-mix concrete and agreeing not to compete." [ECF 1] ¶ 1. They bring causes of action under the federal and Virgin Islands anti-monopoly laws, seeking damages and other relief. *Id.* ¶ 9, and 11. In particular, plaintiffs allege that in December of 2013, defendants entered into written agreements (the "Requirements Supply Agreement" and the

---

[1] On May 11, 2020, plaintiffs voluntarily dismissed their claims against Heavy Materials, LLC. [ECF 22].

"Assignment of Lease") to divide up the ready-mix concrete market between St. Thomas and St. Croix, agreeing not to compete with each another in the respective markets. *Id*. ¶¶ 19, 20. As a result, prices for ready-mix concrete, which plaintiffs purchased from defendants from December 2013 through October 2015, rose to "artificially high" levels on both St. Thomas and St. Croix. *Id*. ¶¶ 12.b., 25, 26, 28, 55. Further, plaintiffs aver that defendants fraudulently concealed their conduct such that, despite diligence on their part, plaintiffs were not able to learn of the wrongful conduct "until the summer of 2019." *Id*. ¶¶ 63, 64.

Defendants Spartan and Mosler moved to dismiss the complaint contending, among other things, that the claims are barred by a four-year statute of limitations. [ECF 24] at 11. Plaintiffs opposed the motion to dismiss [ECF 25]. In addition, plaintiffs filed the instant motion to amend "for the limited purpose of setting forth additional factual allegations regarding the fraudulent concealment exception to the statute of limitations on Plaintiffs' federal antitrust claims." [ECF 28] at 1.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint should be freely given when justice so requires. However,

> [w]hile Rule 15(a) provides that leave to amend should be "freely given," a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.

*Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Futility" denotes that "the complaint, as amended, would fail to state a claim upon which relief may be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Thus, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as applies under [Federal Rule of Civil Procedure] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). In other words, the court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." 6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2019).

"In the Third Circuit, delay alone does not justify denying a motion to amend." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F. 3d 267, 273 (3d Cir. 2001)). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment," and such prejudice must be substantial or undue. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (quotation marks omitted)). Ultimately, whether to grant leave to amend lies within a court's discretion. *Pennsylvania Emps. Ben. Tr. Fund v. Zeneca, Inc.*, 499 F.3d 239, 252 (3d Cir. 2007).

### III. DISCUSSION

Although the complaint alleges plaintiffs were damaged by defendants' actions from December 2013 through October 2015, plaintiffs did not file their complaint until December of 2019, more than four years after the alleged wrongful conduct. *See* [ECF 1] ¶¶ 12.b., 25, 26, 28, 55. In their complaint, they alleged that defendants fraudulently concealed facts essential to their claims, thus tolling the running of the statute of limitations. *Id.* ¶¶ 63, 64. In the instant motion, plaintiffs now argue that by allowing them to plead additional facts, they will meet the pleading standards required to invoke tolling under a theory of fraudulent concealment. [ECF 28] at 2-3. Defendants posit that even the additional proposed facts are insufficient and the amendment should be denied as futile. [ECF 33] at 1-3.

A cause of action for an antitrust violation arises when a defendant "commits an act that injures a plaintiff's business." *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) (citations omitted) ("*Aspartame II*"). "A plaintiff suffers antitrust injury by purchasing a product whose price was anticompetitively fixed." *Id*. However, "[t]he doctrine of fraudulent concealment works to toll the limitations period set forth by statute 'when a plaintiff's cause of action has been obscured by the defendant's conduct.' *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002), *cert. denied,* 538 U.S. 977, 123 S. Ct. 1786, 155 L. Ed. 2d 666 (2003)." *Aspartame II*, 416 F. App'x at 211. In the Third Circuit, a fraudulent concealment allegation must contain three elements:

> Plaintiffs must establish (1) an affirmative act of concealment by defendants, (2) which misled or relaxed plaintiffs' investigation into possible causes of action, and (3) that plaintiffs' ignorance is not attributable to lack of diligence in investigating possible claims.

>*Cetel v. Kirwan Financial Group, Inc.,* 460 F.3d 494, 509 (3d Cir. 2006); *Oshiver v. Levin. Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir. 1994).

*In re Aspartame Antitrust Litig.*, 2007 U.S. Dist. LEXIS 16995, at *9 (E.D. Pa. Jan. 19, 2007) ("*Aspartame I*").

Within the Third Circuit, some district courts have required that fraudulent concealment be pled with the particularity required under Federal Rule of Civil Procedure 9(b), while other courts allow more general pleading. *See, e.g., Aspartame I,* 2007 U.S. Dist. LEXIS 16995, at *9-15 (discussing various standards and collecting cases). The Third Circuit itself has not yet endorsed a particular standard, although it has acknowledged a more relaxed approach may be appropriate in some cases. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645-46 (3d Cir. 1989) (observing that facts related to corporate fraud may only be known by insiders, and "application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud") (citation omitted).

The issue now before the Court is whether the proposed amendment satisfies the pleading requirements for alleging fraudulent concealment as a basis for tolling the statute of limitations. First, the Court notes that plaintiffs contend the subject conspiracy is "self-concealing." [ECF 35] at 2-3. However, whether a price-fixing conspiracy is self-concealing may depend on the industry involved. *See, e.g.*, *In re Magnesium Oxide Antitrust Litig.*, 2011 U.S. Dist. LEXIS 121373, at *78 (D.N.J. Oct. 20, 2011) ("a plaintiff must show circumstances indicating that a price increase 'carries with it a pretense of legitimacy' or 'that it would necessarily be assumed that [it was] the result of legitimate market forces.'") (quoting *In re Publ'n Paper Antitrust Litig.*, 2005

U.S. Dist. LEXIS 19896, at *4 (D. Conn. Sept. 6, 2005)). In the initial complaint, plaintiffs allege, among other things, that the ready-mix concrete business is subject to "regulatory requirements," and that entry into the business is subject to "high barriers," especially in the Territory. [ECF 1] ¶ 31. These allegations suggest the alleged rise in prices during the proposed class period may have been the result of legitimate market forces, and support the claim that the alleged conspiracy was self-concealing.

In their proposed First Amended Complaint, however, plaintiffs also describe affirmative acts taken by defendants (and former defendant Heavy Materials) to conceal their wrongdoing. For example, plaintiffs allege (1) "Defendants told the public that [the Requirements Supply Agreement and Assignment of Lease] were not linked," [ECF 28-2] ¶ 66; (2) "After the unlawful agreement was perfected, the owners of Heavy Materials [inaccurately] advertised to potential buyers that Spartan had unilaterally decided to stop manufacturing and selling ready mix concrete on St. Thomas," *Id.* ¶ 68; and (3) "Spartan's agents and employees told members of the public (and still maintain) that Spartan was 'forced out' of the St. Thomas market," *Id.* ¶ 71. Plaintiffs also refer to a January 2014 email from Heavy Materials' General Manager Allen Klingensmith on St. Croix to Heavy Materials' Doug Gurlea, asking for a copy of the "Agreement with Mosler." *Id.* ¶ 72. Plaintiffs quote Klingensmith as saying, "Don't worry, I will keep it hidden from everyone." *Id.* Given the foregoing, the Court thus finds that plaintiffs have now pled the fraudulent concealment element with sufficient particularity.

Plaintiffs are also required to plead that the failure to discover the claim was not the result of a lack of diligence. Here, plaintiffs allege in the proposed First Amended Complaint that the

unlawful "linkage between the Requirement Supply Agreement and the Assignment of Lease was not knowable through the exercise of reasonable diligence" until the trial in the *Spartan Concrete Products, LLC v Argos Corp.* case in July of 2017, when witnesses testified about the unlawful agreement. [ECF 28-2] ¶ 75. Plaintiffs further allege that Argos' counsel uncovered the agreement during the course of discovery in that case, and that before such discovery, the "agreement was not previously known except by a few individuals with Heavy Materials and Spartan and their respective counsel." *Id*. ¶¶ 76, 77. Finally, plaintiffs state that even if they were "perfectly diligent and clairvoyant, the absolute soonest that they could have learned about the unlawful agreement was November 17, 2016," when Argos moved to amend its answer after the evidence from discovery showed that "Spartan conspired with a competitor to geographically divide the market." *Id*. ¶¶ 78, 79.

Proof regarding diligence and the "red flags" that could have alerted plaintiffs to their claims is particularly fact-based. As a result, a determination of the sufficiency of these allegations should not be conclusively made in advance of discovery. *Aspartame I*, 2007 U.S. Dist. LEXIS 16995, at *21 ("Issues of diligence and constructive notice, which are inherently factual, generally should not be decided on a motion to dismiss.") (citations omitted); *see also In re Elec. Carbon Prods Antitrust Litig.*, 2004 U.S. Dist. LEXIS 17519, at *34-35 (D.N.J. Aug. 30, 2004) ("for purposes of this motion [to dismiss], accepting [the allegations] as true, the plaintiffs have properly alleged due diligence and have provided a specific factual basis for their allegation. Whether evidence of 'suspicious circumstances' or 'storm warnings' emerge during the course of

discovery in this case remains to be seen"). Therefore, the Court declines to conclude at this point in the proceedings, prior to any discovery taking place, that the proposed amendment is futile.

## IV. CONCLUSION

Accordingly, for the reasons set forth and the premises considered, it is ORDERED:

(1) the motion to amend is GRANTED;

(2) plaintiffs shall file their "First Amended Complaint" on the docket within five days of the date of this Order; and

(3) defendants shall respond to the First Amended Complaint in accordance with the applicable rules.

**Dated:** September 22, 2020            S_____
                                         **RUTH MILLER**
                                         United States Magistrate Judge