## DISTRICT COURT OF THE U.S. VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| John St. Rose, Monrose Loctar, and Derrick James, individually and on behalf of all others similarly situated, | Case No. 3:19-cv-00117 |
| *Plaintiffs* | Jury Trial Demanded |
| v. | Putative Class Action |
| Spartan Concrete Products, LLC, and Warren Mosler | |
| *Defendants.* | |

## PLAINTIFF'S OPPOSITION TO SPARTAN CONCRETE PRODUCTS, LLC AND WARREN MOSLER'S MOTION FOR SUMMARY JUDGMENT

Defendants' motion should be denied in full. There are genuine disputes as to the material facts regarding Plaintiff's claims that the statutes of limitations were tolled by one or more theories.

As to **Counts 2 and 3**, Defendants fail to address the discovery rule or cross-jurisdictional tolling, much less meet their burden that there is no genuine dispute as to the material facts, entitling them to judgment as a matter of law.

As for **Count 1**, Defendants' argument against the application of the fraudulent concealment doctrine to the Sherman Act claims also fail:

   i. Plaintiffs have sufficiently alleged and can evidence the self-concealing nature of Defendants' anticompetitive scheme.

   ii. There is competent summary judgment evidence that Defendants, their agents, and their co-conspirators took affirmative actions to conceal their unlawful scheme.

   iii. There is no competent summary judgment evidence that Mr. Loctar discovered his causes of action prior to December 19, 2015 (four years before the filing of the Complaint).

1

iv.     Defendants fail to show undisputed "red flags" prior to December 19, 2015 that should have prompted Mr. Loctar to investigate his claims.

Alternatively, the motion should be deferred or denied without prejudice. As the parties have yet to engage in merits discovery – only class discovery – Rule 56(d) relief is especially appropriate.

## A. Factual Background

Plaintiff purchased ready-mix concrete ("RMC") from Spartan on June 7, 2015. Counter-SUMF 1. At the time, he recognized that prices were higher than normal because Spartan was the only supplier on St. Croix. SUMF 7. He believed (incorrectly) that Spartan had acquired Heavy Materials. Counter-SUMF 8 & 9. He did not know that the high prices were the product of Defendants' agreement to divide the market for RMC by island. Counter-SUMF 10. The first putative class action on these facts was filed in the Superior Court on the December 12, 2017. Counter-SUMF 4. Plaintiff filed this action on December 19, 2019. Counter-SUMF 5. For the purpose of this motion, the relevant period is the time prior to four years before this action was filed, which is December 12, 2015. Counter-SUMF 6.

## B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"[C]redibility evaluations are inappropriate in deciding a motion for summary judgment. . . When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party . . . ." *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991).

"A fact is material if its existence or nonexistence might affect the outcome of the suit under applicable law." *Richards v. Marshall*, No. CV 2009-23, 2011 WL 13229673, at *1 (D.V.I. Sept. 22, 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "District courts usually grant properly filed Rule [56(d)] motions as a matter of course." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309–10 (3d Cir. 2011) (quotation omitted). "If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (citation omitted). "An adequate affidavit or declaration specifies what particular information that is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (quotation omitted).

C. **Summary judgment is not warranted on Count 2 or Count 3 because Defendants fail to address the discovery rule or cross-jurisdictional tolling.**

Count 2 asserts that Spartan is liable under Section 3 of the V.I. Antimonopoly Law, 11 V.I.C. § 1503(1)(c). Doc. 37, p. 8 (¶¶ 44–48). Count 3 asserts that Mr. Mosler is liable under the common law of the Virgin Islands as a participating agent. *Id.* at pp. 8–9 (¶¶ 49–54).

Because these claims both arise under Virgin Islands substantive law, Virgin Islands law also controls whether the territorial claims are timely. *See, e.g., Romero v. Allstate Ins. Co.*, No. CV 01-3894,

2018 WL 2325405, at *5 (E.D. Pa. May 22, 2018) ("Where a district court exercises diversity or supplemental jurisdiction, the *Erie* doctrine requires us to apply the forum state's substantive law for the state law claims, including state statutes of limitations."). The Antimonopoly Law has a four-year statute of limitation provision. 11 V.I.C. § 1507(2). The common law claim is subject to a two year statute of limitations. 5 V.I.C. § 31(5).

While Plaintiff filed his action more than four years after he purchased RFC, his action was nevertheless timely because of two tolling theories: (i) the discovery rule, and (ii) cross-jurisdictional tolling. Plaintiff briefed both issues in opposition to Defendants' motion to dismiss. Doc. 27, p. 6.

The Virgin Islands recognizes the discovery rule. *Santiago v. Virgin Islands Hous. Auth.*, 57 V.I. 256, 273 (V.I. 2012) ("The discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim."); *United Corp. v. Hamed*, 64 V.I. 297, 306 (V.I. 2016) ("Because the application of the discovery rule rests on when a party knew or should have known of its injury, it is typically a question of fact.") (quotation marks and citations omitted). In his complaint Plaintiff avers that he should not have known that he suffered an injury as a result of Defendants' unlawful agreement until the *Argos* trial on July 17 or 18, 2017 when the agreement was first revealed publicly. Doc. 37, pp. 10–11 (¶ 65); *see also* Counter-SUMF 3. He alleges, in the alternative, that he should not have learned of his cause of action until November 17, 2016 when Argos moved for leave to amend its complaint in *Spartan v. Argos. See* Counter-SUMF 2. In the light most favorable to Plaintiff, his action is timely under either discovery date.

Separately, this Court should conclude, after an *Erie* guess of *Banks* analysis, that the Supreme Court of the Virgin Islands would permit class tolling.[1] If it so concludes, then the statutes of

---

[1] Only one Virgin Islands court has previously addressed this issue. *Castillo v. St. Croix Basic Servs., Inc.*, 2020 VI SUPER 35, ¶2 (Super. Ct. 2020) (Molloy, J.) (noting "the question[ as] one of first impression . . . [in] the Virgin Islands"). As it explained, "The majority of courts, following *American Pipe,* recognize intra-jurisdictional tolling but, on cross-jurisdictional tolling, "jurisdictions are split . .

limitations on Count 2 and Count 3 were tolled on the December 12, 2017, when the first putative

class action was filed in the Superior Court. *See* Counter-SUMF 4. This independently makes Count 2

timely because Plaintiff filed within four years of the date he purchased RMC (excluding the time from

when the Superior Court action was filed through when Plaintiff initiated this action, as class

certification has not been denied in the Superior Court action).

In any event, summary judgment is not appropriate on either tolling theory because

Defendants do not brief them. The Court is ill-equipped to conclude that there is no genuine issue of

material fact for a jury resolve, warranting judgment as a matter of law.

**D. Summary judgment is not warranted on Count 1 because there are disputed issues of fact on Plaintiff's fraudulent concealment claim.**

**1. Concealment.**

This Court should recognize both the self-concealing standard and "affirmative act"

(intermediate) standard for concealment.[2] Both doctrines are legally sound, and there are disputed

issues of fact as to whether either applies.

> **a. The Supreme Court and a majority of district courts in the Third Circuit recognize the theory of a self-concealing fraud, which the Court has already held that Plaintiff adequately alleges.**

---

. ." *Id.* (citations omitted). Ultimately, the court concluded that "the soundest rule for the Virgin Islands is to recognize intra-jurisdictional class action tolling, and by extension cross-jurisdictional tolling, and further hold that '[t]olling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action . . . .'" *Id.* at ¶3 (citation omitted).

[2] The Court should summarily reject the "extrinsic act" (most difficult) standard as in consistent with equity and law. *See, e.g., In re Mercedes-Benz Anti-Tr. Litig.*, 157 F. Supp. 2d 355, 369 (D.N.J. 2001) ("There is nothing in the law of the Third Circuit that restricts equitable tolling to cases involving acts of concealment that are extrinsic to the underlying wrong. Acts of concealment that also further the incidental goals of the conspiracy also may shield the wrongdoer while the statute of limitations runs. This Court sees no reason why an affirmative act of concealment performed as part of the conspiracy itself may not also supply the affirmative act required by the fraudulent concealment doctrine.") (citation omitted).

This Court already recognized the self-concealing fraud theory when it granted Plaintiffs'

conditional motion for leave to amend their complaint. Doc. 36, p. 6 ("These allegations suggest the

alleged rise in prices during the proposed class period may have been the result of legitimate market

forces and support the claim that the alleged conspiracy was self-concealing."). There is no reason to

reconsider that decision here. Nevertheless, "A survey of district court cases reveals that, while there

is some divergence, for the most part courts in [the Third] Circuit have applied the 'self-concealing'

standard to antitrust conspiracies." *In re Fasteners Antitrust Litig.*, No. 08-MD-1912, 2011 WL 3563989,

at *4 (E.D. Pa. Aug. 12, 2011) (string cite omitted).[3]

Defendants argue that "the alleged conspiracy [could not have been] self-concealing because

Loctar testified that he and others were aware of alleged collusion between Spartan and Heavy

Materials . . . ." Doc. 79, p. 11. They assert that Mr. Loctar testified that "he had heard of an agreement

between Spartan and Heavy Materials with respect to the price of [RMC]" and that he "and other

customers were aware of an agreement . . . with respect to price." Doc. 79, pp. 11–12.

That is entirely inaccurate. Mr. Loctar did not testify that he was aware of any collusion, nor

did Mr. Loctar testify that about any agreement regarding pricing. Defendants cite to twelve statements

of uncontested fact as authority – none of which support this specific contention. In any event, Mr.

---

[3] The Supreme Court endorsed the *self-concealment* doctrine in *Bailey v. Glover*, 88 U.S. 342 (1874). "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made sucessful and secure." *Id.* at 349. "[T]he reasoning of *Bailey* remains sound and binding on this Court, and [] the self-concealing conspiracy concept is established in the antitrust case law." *In re Mercedes-Benz Anti-Tr. Litig.*, 157 F. Supp. 2d 355, 371 (D.N.J. 2001). "The rule of *Bailey* was already old when Congress enacted the four-year statute of limitations in the Clayton Act. Congress could not have intended to exempt those who would 'commit[ ] a fraud in a manner that it concealed itself.'" *Id.* (citation omitted). "If the conspiracy conceals itself, it would be anomalous to require plaintiff to allege affirmative acts by defendants to conceal the conspiracy because such acts would be unnecessary and therefore never performed." *Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*, 641 F. Supp. 271, 274 (E.D. Pa. 1986) (discussing *Bailey*).

Loctar avers that he was not aware of any collusive behavior – nor did he understand the nature of the agreement between Spartan and Heavy Materials – until the Summer of 2019. Counter-SUMF 9.

In the alternative, the Court should grant Rule 56(d) relief. Plaintiff has not had the opportunity to engage in merits discovery. If given the opportunity, Plaintiff intends to depose Spartan, Heavy Materials, and their respective agents and employees on their agreement. Plaintiff anticipates that the depositions will reveal that the agreement was designed in such a way to avoid detection by consumers of RMC. *See* Exhibit 6 (Declaration of C. Jacob Gower, Esq.).[4]

### b. There is sufficient and admissible evidence of Defendants' affirmative acts to conceal their agreement.

Despite the Court's previous ruling "that plaintiffs have now pled the fraudulent concealment element with sufficient particularity" in granting Plaintiffs' leave to file their First Amended Complaint [Doc. 36, p. 6], Defendants now advance three arguments why those allegations remain insufficient.

The Court should not use this motion to reconsider its previous order granting Plaintiffs' leave to amend – that decision should be considered *law of the case*. But if the Court is so inclined to address them, Defendants' arguments should be rejected.

**First**, Defendants argue that any denials that the Requirement Supply Agreement and the Assignment of Lease were linked is not evidence of concealment because "[Mr.] Loctar testified under oath that he does not know what the Requirements Supply Agreement is . . . ." Doc. 79, p. 14. That

---

[4] Plaintiff further notes that Defendants repeatedly objected to legitimate requests for production issued during class discovery on the basis that "disclosure may be prohibited by Fed. R. Crim. P. 6 and/or . . . interfere with a Grand Jury Investigation." *See* Exhibits 8 & 9. To be clear, Plaintiffs were unaware of and never asked about any grand jury proceedings and materials. But as the materials are not entirely necessary for class certification, Plaintiffs made the strategic decision to save this battle until the merits phase. However, in light of Defendants' early motion for summary judgment, Rule 56(d) relief would permit Plaintiffs the opportunity to meet-and-confer with Defendants and file a motion to compel the production of withheld materials. Plaintiff suspects that these withheld materials are likely to be especially relevant because they are apt to reveal Defendants misleading others and the government on the nature of the agreement with Heavy Materials.

argument fails for three reasons: (1) Mr. Loctar need not know anything about the Requirement Supply Agreement in order to *also not* know that the Requirement Supply Agreement and Assignment of Lease were linked. Both can be and are true. (2) There is no legal requirement a plaintiff be directly misled by the denials. Rather, a jury could reasonably infer that the denials affected Mr. Loctar's and others' perceptions as to whether prices are the product of legitimate market forces or collusive activity. (3) Mr. Loctar knows what the Requirement Supply Agreement is—by its function, if not by its official name. *See* Counter-SUMF 11. In response to the question, "Have you heard of *a* requirement supply agreement?" (italics added), Mr. Loctar responded, "Not aware of what it is, no." Not only does the choice of article ("a" versus "the") make the question confusing, Defendants did not follow-up at all – perhaps deliberately. Mr. Loctar was not shown a copy of the Requirements Supply Agreement nor asked about any of its provisions.

**Second**, Defendants argue that the allegations "that certain actions were hidden from prospective purchasers . . . [is] irrelevant because prospective purchasers . . . are not named Plaintiffs and are not included in the proposed class." Doc. 79, p. 15. This argument fails for the same reason as above. There is no requirement that the concealment be targeted at putative class members. Rather, a reasonable jury could conclude that misleading prospective purchasers was part and parcel of a concerted effort to prevent *everyone* from learning about the agreement, including customers from learning about their causes of action.[5]

---

[5] Defendants do not contest the existence of such evidence. As such, that evidence is not attached. If, however, the Court would prefer Plaintiff make this evidentiary showing, Plaintiff is happy to oblige.

Plaintiff notes, however, that all of the documentary evidence has been designated confidential by Heavy Materials pursuant to a protective order. Unless Heavy Materials is willing to waive its confidentiality claims, Plaintiffs would need to seek leave to tentatively file the emails under seal.

**Third**, Spartan addresses the two emails by employees of Heavy Materials.[6] It argues that "internal communications made within Heavy Materials . . . [do not] constitute affirmative acts of concealment by Spartan." Doc. 79, p. 15. It explains: (1) the emails "are internal communications of Heavy Materials, which is no longer a party to [the] action"; (2) "the communications . . . were made by Heavy Materials agents to other Heavy Materials agents"; and (3) "Spartan did not have a duty to disclose Heavy Materials's confidential business communications to Plaintiffs." Doc. 79, p. 15. The first two arguments should be denied for the same reason. Whether it is a party to this action or not, Heavy Materials is an alleged co-conspirator. Its communications are admissible against Spartan. Fed. R. Evid. 801(d)(2)(E) ("A statement is not hearsay [if it is] offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."); *In re Mercedes-Benz Anti-Tr. Litig.*, 157 F. Supp. 2d 355, 372 (D.N.J. 2001) ("As a co-conspirator, [the defendant] acted as the agent of all the other alleged conspirators, and the alleged affirmative act of concealment is chargeable to each of them."). As to the third argument, Plaintiff does not allege mere silence. Rather, both allegations are "urging[s] . . . to maintain secrecy . . . [which] count[] as [] affirmative act[s] of concealment." *Id.*

Moreover, there is additional evidence in the record that Defendants affirmatively concealed their scheme. For example, Mr. Mosler asked that the parties' agreement be subject to a confidentiality provision, which Heavy Materials obliged. Counter-SUMF 12. In the light most favorable to Mr.

---

[6] The email from Kurt Nose to Doug Gurlea was introduced as Trial Exhibit 92 in the *Argos* trial, and Mr. Nose testified about this email at trial. *See* Case No. 3:15-cv-00004, ECF 178, at pp. 54–56, also attached as Exhibit 7.

The email from Allen Klingensmith to Doug Gurlea was produced by Heavy Materials in the Superior Court action, bearing Bates number HM-GILBERT-001892. Because Defendants don't question the existence of this email, and because it's designated as confidential, it is not attached to this opposition. If the Court believes that having a copy of the email is necessary to resolve the motion, then as before, Plaintiffs ask for the opportunity to supplement the record with an attendant motion to file preliminarily under seal.

Loctar as the non-movant, all of this evidences a clear intent to conceal.

If the Court is inclined to grant Defendants' motion on this basis, Rule 56(d) relief is appropriate in the alternative. The parties have not engaged in merits discovery – only class certification discovery. As such, the record is not fully developed. If discovery were permitted to continue, Plaintiff intends to depose the principals and employees of Spartan and Heavy Materials about their efforts to maintain confidentiality and mislead others as to the true nature of their agreement. *See* Exhibit 6 (Declaration of C. Jacob Gower, Esq.).

**2. Plaintiff did not discover the factual basis of cause of action until within four years of filing suit.**

Defendants argue that Mr. Loctar cannot invoke the fraudulent concealment doctrine because he "knew of the factual basis for his cause of action no later than July 2015." Doc. 79, p. 16. This argument should be denied because it is contrary to the evidence.

"[T]he issue is not whether plaintiffs knew that the prices paid were higher than they should have been, rather, the primary issue is whether the named plaintiffs and the members of each of the classes knew of the alleged conspiracy among defendants." *In re Mercedes-Benz Anti-Tr. Litig.*, 157 F. Supp. 2d 355, 373 (D.N.J. 2001) (*In re Flat Glass,* 191 F.R.D. 472, 488 (W.D. Pa. 1999)). Among other things, Plaintiff would need to know that: (i) the "defendants agreed that they would not compete with each other in *allocation*", and (ii) "plaintiff was injured in [his] business or property because of [that] agreement." American Bar Association, Model Jury Instructions in Civil Antitrust Cases 38 (2005 ed.) ("Instruction 2: Allocation of Territories or Geographic Areas") (italicization and bracketing in original).

There is no evidence to support the conclusion that Plaintiff understood he had a cause of action as soon as he purchased RMC in June 2015. Rather, Mr. Loctar testified that he understood that prices for RMC had risen because Spartan was the only producer at the time. Counter-SUMF 7. But he also testified that he understood Spartan had acquired its previous competitor Heavy Materials.

Counter-SUMF 8. That was not accurate. Counter-SUMF 9. And while an acquisition would explain

the rise in prices insofar as it resulted in a monopoly, an acquisition of a competitor (with the exception

of mergers subject to pre-clearance review by the FTC, which is not the case here) is perfectly lawful

even if it results in monopolization.[7]

**3. Plaintiff's failure to discover his cause of action was not a result of his lack of diligence.**

Defendants argue that "the alleged increase in the price of ready-mix, the discussions among

purchasers of ready-mix of an agreement between Spartan and Heavy Materials, and the proposed

counterclaim filed by Argos in *Spartan v. Argos* were loud and clear storm warnings" that "required

[Mr. Loctar] to do something." Doc. 79, at p. 18.

Plaintiff disagrees that Argo's motion for leave to amend was a "storm warning."[8] That

---

[7] *See*, e.g., *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 62 (1911) ("[A]lthough the statute, by the comprehensiveness of the enumerations embodied in both the 1st and 2d sections, makes it certain that its purpose was to prevent undue restraints of every kind or nature, nevertheless by the omission of any direct prohibition against monopoly in the concrete, it indicates a consciousness that the freedom of the individual right to contract, when not unduly or improperly exercised, was the most efficient means for the prevention of monopoly . . . .");

*United States v. Aluminum Co. of Am.*, 148 F.2d 416, 430 (2d Cir. 1945). "A single producer may be the survivor out of a group of active competitors, merely by virtue of his superior skill, foresight and industry. In such cases a strong argument can be made that, although the result may expose the public to the evils of monopoly, the Act does not mean to condemn the resultant of those very forces which it is its prime object to foster: finis opus coronat. The successful competitor, having been urged to compete, must not be turned upon when he wins.");

U.S. Department of Justice, *Competition and Monopoly: Single-Firm Conduct Under Section 2 of the Sherman Act: Chapter 1* (updated June 25, 2015), https://www.justice.gov/atr/competition-and-monopoly-single-firm-conduct-under-section-2-sherman-act-chapter-1#N_38 ("As long as a firm utilizes only lawful means, it is free to strive for competitive success and reap the benefits of whatever market position (including monopoly) that success brings, including charging whatever price the market will bear. Prohibiting the mere possession of monopoly power is inconsistent with harnessing the competitive process to achieve economic growth.").

[8] As explained in the First Amended Complaint, "the motion for leave did not reveal the factual predicate for the counterclaim. Rather, it was only 'set forth in the attached proposed counterclaim' as an exhibit, which is significantly redacted, ostensibly for confidential information. Case: 3:15-cv-000004-CVG-RM, Doc. 115-1. Moreover, the allegations were merely hearsay, as documents and testimony cited were not attached and made part of the record." Doc. 37, p. 13 (¶ 80).

certainly has not been evidenced as a matter of law. But even it was a storm warning, it is not relevant to this motion. Argos moved to amend its answer on November 17, 2016, which is within four years of when Plaintiff initiated this action in December 2019. *See* Counter-SUMF 5. That's timely.

Defendants remaining arguments – rumors and discussions about an agreement and a rise in prices – are relevant, but they were not "storm warnings" as a matter of law.

Regarding rumors and discussions, Mr. Loctar testified that he believed that Spartan had acquired its competitor Heavy Materials. Counter-SUMF 8. That was not correct; Spartan had not acquired Heavy Materials. Counter-SUMF 9. As discussed above, an acquisition could explain the rise in prices, and acquisitions are perfectly legal.

Regarding prices, a rise in price – standing alone – is not a "storm warning". As also discussed above, a rise in prices may reflect legitimate market forces. That's especially true with *self-concealing* conspiracies, because the particular market arrangement gives supra-competitive prices the imprimatur of legitimacy. Doc. 36, p. 6 ("These allegations suggest the alleged rise in prices during the proposed class period may have been the result of legitimate market forces and support the claim that the alleged conspiracy was self-concealing."). There is no evidence in the record that Mr. Loctar should have given pause, as a matter of law, to consider whether the admittedly high price he paid for RMC was the product of unlawful behavior.

In granting Plaintiffs' conditional motion for leave, the Court noted: "Proof regarding diligence and the 'red flags' that could have alerted plaintiffs to their claims is particularly fact-based. As a result, a determination of the sufficiency of these allegations should not be conclusively made in advance of discovery." Doc. 36, p. 7 (citations omitted). Plaintiff again notes that the parties have not engaged in merits discovery, and if the Court is inclined to grant Defendants' motion on this basis, Rule 56(d) relief is warranted. *See* Exhibit 6 (Declaration of C. Jacob Gower, Esq.).

**\*\*\*\*\***

WHEREFORE, Plaintiff prays Defendants' motion be denied. There are disputed material issues of fact regarding: (1) application of the discovery rule and the availability of cross-jurisdictional tolling; (2) the self-concealing nature of Defendants' anticompetitive scheme; (3) the affirmative steps taken by Defendants, their agents, and their co-conspirators to conceal their scheme; (4) Plaintiff not discovering his causes of action prior to December 19, 2015; and (5) the absence of "red flags" prior to Defendants to December 19, 2015 that would have prompted Mr. Loctar to investigate his claims.

Dated:  July 13, 2021                    Respectfully submitted,


<u>/s/ C. Jacob Gower, Esq.</u>
Korey A. Nelson, Esq.
C. Jacob Gower, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq.
Daniel H. Charest, Esq.
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 890, St. Thomas,
USVI 00804
Telephone: (340) 777-7283
Cellular: (340) 690-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com
SunLawVI@gmail.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing was served on the following individuals on this 13th day of July via CM/ECF:

Christopher A. Kroblin, Esq.
Marjorie Whalen, Esq.
KELLERHALS FERBUSON KROBLIN PLLC
Royal Palms Professional Bldg.
9053 Estate Thomas, Suite 101
St. Thomas, VI 00802-3602
ckroblin@kellfer.com
mwhalen@kellfer.com

**Counsel to Spartan Concrete
Products, LLC & Warren Mosler**

*/s/ C. Jacob Gower*
C. Jacob Gower