# DISTRICT COURT OF THE U.S. VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| **John St. Rose, Monrose Loctar, and Derrick James, individually and on behalf of all others similarly situated,** *Plaintiffs* v. **Spartan Concrete Products, LLC, and Warren Mosler** *Defendants.* | Case No. 3:19-cv-00117<br><br>Jury Trial Demanded<br><br>Putative Class Action |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL ACTS

Plaintiff Monrose Loctar responds to defendants Spartan Concrete Products, LLC and Warren Mosler's statement of undisputed material facts as follows:

**SUMF 1.** Monrose Loctar claims he purchased ready mix concrete from Spartan on July 7, 2015. *See* Exhibit A, Monrose Loctar's Responses to Interrogatories, at response to Interrogatory 2 (page 3).

**Response.** Admitted.

**SUMF 2.** Loctar also claims he purchased concrete from Heavy Materials and Mark 21 but "[h]e cannot recall any particular dates, purchases, volume purchased, price per cubic yard, or purchase price (initial or paid)." *See* Exhibit A at response to Interrogatory 2 (page 3).

**Response.** Plaintiff objects to SUMF 3 as it is not material to resolution of the motion because Plaintiff does not contend that he purchased RMC from Heavy Materials or Mark 21 during the Class Period. Notwithstanding the materiality objection, the statement is admitted.

**SUMF 3.** Loctar does not have any documents or other evidence of any purchases from Heavy Materials or Mark 21. *See* Exhibit B, Plaintiff Monrose Loctar's First Supplemental Responses

to Defendants' First Set of Requests for Production, at response to RFP No. 2 (page 1) and Exhibit C, Loctar Depo Transcript, at 44:3-16; 17:13-20.

**Response.** Plaintiff objects to SUMF 3 as it is not material to resolution of the motion because Plaintiff does not contend that he purchased RMC from Heavy Materials or Mark 21 during the Class Period. Notwithstanding the materiality objection, the statement is admitted.

**SUMF 4.** Loctar does not have any documents or other evidence of his July 2015 purchase from Spartan. See Exhibit B at response to RFP No. 2 (page 1) and Exhibit C at 44:3-16.

**Response.** Denied. Plaintiff's purchase of RMC from Spartan in July 2015 is evidenced in Spartan's own records. *See* Counter-SUMF 1.

**SUMF 5.** Loctar confirmed that he considers both price and service when purchasing ready-mix, but "price is always better" than service, meaning price is the more important factor. See Exhibit C at 29:1-13.

**Response.** Plaintiff objects to SUMF 5 as immaterial to resolution of the motion. Whether Plaintiff believes prices is more important does not factor into the fraudulent concealment analysis. Notwithstanding the materiality objection, the statement is admitted.

**SUMF 6.** Loctar testified that during the class period, from December 2013 to October 2015, he observed the price of ready-mix concrete "jump up" from "about . . .130-something" "to a hundred and seventy-something". See Exhibit C at 25:14-20.

**Response.** Admitted.

**SUMF 7.** Although he could not recall the price he paid for the ready-mix he purchased from Spartan in July 2015, he thought the price was high and he believed the reason the price was so high was because Spartan was the only concrete company on island at that time. Exhibit C at 25:24-26:4.

**Response.** Admitted.

**SUMF 8.** Later in his testimony, after being shown his response to Spartan's Interrogatory 2, wherein Loctar responded he paid One Hundred Seventy-One Dollars ($171.00) per cubic yard for the ready-mix he purchased from Spartan on July 7, 2015, Loctar said that his written response to Spartan's Interrogatory seemed accurate. See Exhibit C at 42:5-43:5 and Exhibit A at response to Interrogatory 2 (page 3).

**Response.** Admitted.

**SUMF 9.** He again confirmed that when he purchased ready-mix from Spartan in July 2015, he thought the price was high. See Exhibit C at 42:5-44:2.

**Response.** Admitted.

**SUMF 10.** Before Loctar purchased ready-mix from Spartan in July 2015, he had heard of an agreement between Spartan and Heavy Materials wherein "Spartan bought Heavy Materials, shut them down, and then jack up the price on us." See Exhibit C at 31:22-32:25.

**Response.** Admitted.

**SUMF 11.** Loctar further elaborated, "He bought his competition." See Exhibit C at 31:22-32:25.

**Response.** Admitted.

**SUMF 12.** Loctar and other purchasers of ready-mix who were also friends of Loctar's complained amongst themselves about the price of ready-mix and about the alleged agreement between Spartan and Heavy Materials. See Exhibit C at 33:3-15.

**Response.** Admitted.

**SUMF 13.** "[W]e complain all the time about the price", Loctar testified. See Exhibit C at 33:3-12.

**Response.** Admitted.

**SUMF 14.** One of those other purchasers was Plaintiff Derrick James, who has requested to be dismissed from this action. See Exhibit C at 33:23-34:12.

**Response.** Admitted.

**SUMF 15.** Loctar and James discussed the alleged agreement between Spartan and Heavy Materials and the price of ready-mix concrete. See Exhibit C at 33:23-34:12.

**Response.** Denied. Mr. Loctar did not testify that he and Mr. James "discussed the alleged agreement" that's the basis for the First Amended Complaint. Rather, Mr. Loctar testified (i) he had heard rumors that Spartan acquired Heavy Materials, and (ii) he and Mr. James recently discussed this action and their recollection that prices were high.

**SUMF 16.** In the companion Superior Court action, Judge Molloy found that the Virgin Islands Anti-Monopoly Law is different than the federal statute in that the Virgin Islands Anti-Monopoly Law does not contain any provision for liability of directors and agents of a corporation. See Exhibit D, Transcript of October 22, 2019 Hearing, at 59-61.

**Response.** Plaintiff objects to the statement as Judge Molloy's finding is not material to resolution of the motion because Plaintiff does not bring Count 2 against Mr. Mosler. In any event, the statement is denied because it incorrectly describes Judge Molloy's finding. Territorial law is not different from the federal law because it "does not contain any provisions for liability of directors and agents". Neither federal nor territorial law contains such a provision.

**SUMF 17.** During his deposition, however, Loctar testified that he does not know what the Requirements Supply Agreement is. See Exhibit C at 31:22-32:2.

**Response.** Denied. In response to the question, "Have you heard of *a* requirement supply agreement?" (italics added), Mr. Loctar responded, "Not aware of what it is, no." He was not asked about *the* Requirements Supply Agreement, nor was the Requirements Supply Agreement shown to Mr. Loctar to confirm.

4

**SUMF 18.** As far as Loctar knows, none of the people he spoke with took any action or made any complaint about the increase in the price of ready-mix. See Exhibit C at 44:17-45:5.

**Response.** Admitted.

**SUMF 19.** Loctar failed to undertake any kind of investigation into his claims at any point in time. See Exhibit A at response to Interrogatory 12 (pages 5-6) (stating that "Plaintiff ha[s] not "claim[e]d that [he] personally exercised diligence in investigating the claims [he] bring[s] in [this] action".) and response to Interrogatory 11 (stating that Loctar "was not obligated to investigate his causes of action in the absence of 'red flags'. As alleged in the First Amended Complaint, there were no such red flags.").

**Response.** Plaintiff objects to the verb "failed". He was not obliged to investigate his potential claims in the absence of "red flags", of which there were none prior to at last November 17, 2016. Plaintiff further objects to the phrase "at any point in time". The relevant window is limited to the time between when Plaintiff's cause of action accrued (June 7, 2015) and four years prior to the filing of suit (December 12, 2015). Moreover, neither interrogatory response supports Defendants' conclusion that Plaintiff took no investigation at *any* point in time.

*****

Plaintiff offers the following counter-statement of undisputed material facts as follows:

**Counter 1.** Plaintiff purchased RMC from Spartan on July 7, 2015. Exhibit 1 (summary exhibit of 2015 Sales by Customer Detail.csv produced by Defendants in native format, at lines 1 & 4944–48; with original columns D, E & F deleted for space).

**Counter 2.** In the *Spartan v. Argos* action, Argos moved for leave to amend to amend its answer on November 17, 2016. (Plaintiff asks the Court to take judicial notice of ECF 115, Case No. 3:15-cv-00004.)

**Counter 3.** Trial of the *Argos* action took place on July 17 and 18, 2017. (Plaintiffs ask the Court to take judicial notice of its calendar.)

**Counter 4.** The first putative class action was filed in the Superior Court on the December 12, 2017. *See* ECF 24 (Defendants' motion to dismiss), p. 2. ("The first lawsuit was filed on December 12, 2017 in the Superior Court of the Virgin Island . . . ." (footnote omitted)).

**Counter 5.** This action was filed on December 12, 2019. *See* ECF 1.

**Counter 6.** Four years before the date this action was filed is December 12, 2015. (Plaintiff asks the Court to take judicial notice of the calendar.)

**Counter 7.** When Mr. Loctar purchased RMC from Spartan on July 7, 2015, he believed that prices were high because Spartan was the only producer of RMC on St. Croix at the time. ECF 80-3, p. 5, ll. 2–4.

**Counter 8.** Mr. Loctar believed that Spartan was the only producer because it acquired Heavy Materials. *See* ECF 80-3, p. 8, ll. 5–15.

**Counter 9.** Spartan had not acquired Heavy Materials as Mr. Loctar believed. Exhibits 2 & 3.

**Counter 10.** Mr. Loctar was not aware of the agreement between Spartan and Heavy Materials to divide the market for RMC by island prior to the summer of 2019. Exhibit 4 (Declaration of M. Loctar); ECF 80-3, p. 8, ll. 23–25.

**Counter 11.** Mr. Loctar is familiar with the Requirement Supply Agreement, but he misunderstood Defendants' sole question about the agreement at his deposition. Exhibit 4 (Declaration of M. Loctar).

**Counter 12.** The parties added a confidentiality provision to the Assignment of Lease at the request of Warren Mosler. Exhibit 5 (HM-GILBERT-001704).

Dated: July 13, 2021						Respectfully submitted,


/s/ C. Jacob Gower, Esq.
Korey A. Nelson, Esq.
C. Jacob Gower, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq.
Daniel H. Charest, Esq.
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 890, St. Thomas,
USVI 00804
Telephone: (340) 777-7283
Cellular: (340) 690-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com
SunLawVI@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing was served on the following individuals on this 13th day of July via CM/ECF:

Christopher A. Kroblin, Esq.
Marjorie Whalen, Esq.
KELLERHALS FERBUSON KROBLIN PLLC
Royal Palms Professional Bldg.
9053 Estate Thomas, Suite 101
St. Thomas, VI 00802-3602
ckroblin@kellfer.com
mwhalen@kellfer.com

**Counsel to Spartan Concrete Products, LLC & Warren Mosler**

*/s/ C. Jacob Gower*
C. Jacob Gower