DISTRICT COURT OF THE U.S. VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| **John St. Rose, Monrose Loctar, and Derrick James, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**Spartan Concrete Products, LLC, and Warren Mosler**<br><br>*Defendants.* | Case No. 3:19-cv-00117<br><br>Jury Trial Demanded<br><br>Putative Class Action |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MONROSE LOCTAR'S MOTION TO CERTIFY A RULE 23(b)(3) CLASS

Plaintiff Monrose Loctar moves for the certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. He asks to be named Class Representative, and that his counsel be named Class Counsel.

Defendant Spartan Concrete Products, LLC ("Spartan") and non-party Heavy Materials, LLC ("Heavy Materials") made an Agreement to divide the market for ready-mix concrete ("RMC") in the U.S. Virgin Islands by geography in violation of the law. Defendant Warren Mosler actively participated in crafting that scheme.

Mr. Loctar purchased RMC from Spartan at an inflated price when the unlawful Agreement was in effect. He and the others who purchased RMC are entitled to recover the difference between what they actually paid and what they would have paid but for the unlawful Agreement.

The requirements for class certification are readily met here. Resolution on the merits will turn almost exclusively on Defendants' and their co-conspirators' discovery responses, testimony, and documents. The existence of an antitrust conspiracy is a predominating issue. While the amount of damage may differ, injuries will be shown by evidence common to the class.

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

## I. Statement of Facts

RMC is a construction material made from cement, water, and aggregates (sand and stone).[1] It is a distinct product in the V.I. marketplace, as "there are few substitutes for RMC" like asphalt or construction store materials "that may function to constrain prices."[2] Further, there are distinct geographic markets on St. Croix and St. Thomas because RMC dries quickly (usually within a few hours), and shipping RMC from between islands is cost and time prohibitive.[3]

Between 2010 and 2013, Spartan and Heavy Materials competed in the market for the retail sale of RMC in the U.S. Virgin Islands.[4] Both companies manufactured and sold RMC on both St. Thomas and St. Croix.[5] Together they comprised all or virtually all of the market shares on both St. Croix and St. Thomas.[6] They competed vigorously on price to maximize their respective shares of the

---

[1] *About Concrete*, National Ready Mixed Concrete Association, https://www.nrmca.org/about-nrmca/about-concrete/ (last accessed Aug. 29, 2021).

[2] Exhibit 1, Expert Report of W. Scott Dalrymple (June 1, 2021) [hereinafter *Dalrymple Report*], at ¶ 37 (internal quotation marks and citation omitted).

[3] *Id.* at ¶ 35.

[4] Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFA 13 (Spartan admits that "prior to the commencement of the Class Period, Spartan and Heavy Materials competed for customers of ready-mix concrete on both St. Thomas and St. Croix."); and

Exhibit 3, *Heavy Materials's Answer to Plaintiffs' Revised Second Amended Complaint*, ST-17-CV-486 (V.I. Sup. Ct. 11/6/19) [hereinafter *Heavy Materials's Answer*], at ¶14 ("Heavy Materials admits that it competed with Spartan in the U.S. Virgin Islands for the sale of [RMC] from 2010 to 2013.").

[5] Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFA 7 (Spartan admits that it manufactured and sold ready-mix concrete on St Thomas from 2010 to 2013) & RFA 4 (Spartan admits that it "manufactured and sold [RMC] on St. Croix before December 2013.").

[6] Exhibit 4, at p. 19 ▮▮▮▮▮▮ and *id.* at p. 10 ▮▮▮▮▮▮

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 3 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

RMC market.[7]

Eventually in December 2013, the competitors agreed to cease competing with one another. Their Agreement consisted of two contracts—(i) an Amendment to Lease, Assignment and Assumption of Lease and Landlord's Consent and Estoppel ("Assignment of Lease"),[8] and (ii) the Requirements Supply Agreement.[9] The two contracts were consideration for one another: executed contemporaneously;[10] contingent on one another;[11] authorized in the same corporate instruments.[12]

In the Assignment of Lease, Spartan assigned its St. Thomas facility, as well as all of the equipment to conduct its RMC operations on St. Thomas, to Heavy Materials.[13] Immediately upon entering into the Assignment of Lease, Spartan ceased competing with Heavy Materials on St. Thomas;[14] stopped manufacturing and selling RMC on St. Thomas.[15] Heavy Materials continued to

---

[7] Doc. 42, *Answer & Affirmative Defenses of Warren Mosler and Spartan Concrete Prods.* (filed 10/13/20), at ¶¶ 14 & 15.

Exhibit 4, *Allen-Villere Memo*, at 5 ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████.

[8] Exhibit 5, *Amendment to Lease, Assignment and Assumption of Lease and Landlord's Consent and Estoppel* [hereinafter *Assignment of Lease*]; and

Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFAs 3 & 4 (admitting that the Assignment of Lease is authentic and a business record).

[9] Exhibit 6, *Requirements Supply Agreement*; and

Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFAs 1 & 2 (admitting that the Requirement Supply Agreement is authentic and a business record).

[10] Exhibit 3, *Heavy Materials's Answer*, at ¶ 20 ("Heavy Materials admits that it entered into these agreements with Spartan on or about December 15, 2013.").

[11] Exhibit 7, Heavy Materials Rule 30(b)(6) Dep. (9/20/16), at 86:25–87:3, 87:23–88:10, 90:6-11); and

Exhibit 8, *Argos* Trial Transcript, Testimony of Doug Gurlea (7/18/2017), at 43:12–44:15.

[12] Exhibit 20, *Argos* Trial Transcript, Testimony of Kurt Nose (7/17/17), at 53:14–54:14.

[13] Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFA 15.

[14] Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFA 14.

[15] *Id.* at RFAs 8 & 16.

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 4 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

manufacture and sell RMC on St. Thomas and became the dominant market player on that island.[16]

In the Requirements Supply Agreement, Heavy Materials agreed to, among other things, cease selling RMC on St. Croix in exchange for Spartan purchasing all of its aggregate needs from Heavy Materials.[17] The term was until October 31, 2018, with the option for two five-year extensions.[18] Heavy Materials discontinued its St. Croix RMC operations on or about December 20, 2013,[19] and it did not compete with Spartan on St. Croix thereafter.[20] After Heavy Materials withdrew, Spartan continued to manufacture and sell RMC on St. Croix,[21] and it became the island's only supplier.[22]

Mr. Mosler was an owner and principal of Spartan and a moving force for the Agreement. During the pre-class period, he had repeatedly approached Heavy Materials with buyout offers, which

---

[16] Exhibit 4, *Allen-Villere Memo*, at p. 19 █████████████

[17] Exhibit 6, Requirements Supply Agreement; and Exhibit 4, *Allen-Villere Memo*, at p. 19 █████████████

[18] Exhibit 6, Requirements Supply Agreement, p. 1.

[19] Exhibit 10, *Spartan Rule 30(b)(6) Depo.* (8/30/16), at 176:25–177:4;
Exhibit 7, Heavy Materials Rule 30(b)(6) Depo. (9/20/16), at 38:1-12, 38:22–39:2; and
Exhibit 20, *Argos* Trial Transcript, Testimony of Kurt Nose (7/17/17), at 47:9-12 & 51:8-13.

[20] Exhibit 2, *Spartan's Responses to Plaintiffs' RFAs*, at RFA 17 (admitting "that, as a consequence of entering into the Requirement Supply Agreement, Spartan no longer had to compete with Heavy Materials for customers of ready-mix concrete on St. Croix").

[21] *Id.* at RFA 11.

[22] *See* Exhibit 4, *Allen-Villere Memo*, at 42 █████████████

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 5 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

were consistently rebuffed.[23] All the while, Spartan began selling RMC below cost,[24] with Mr. Mosler making the pricing decisions.[25] This pricing strategy was designed to "break" the back of Heavy Materials,[26] and it ultimately succeeded.[27] As Mr. Mosler noted during the negotiations, the Agreement that was ultimately signed was favorable to him—"Don't see how we are giving anything. I get STX. . . . I get STX with good prices."[28]

Plaintiff Monrose Loctar purchased RMC from Spartan on June 7, 2015.[29] He used the RMC to construct a portion of his home in Enfield Green.[30]

As a result of Spartan and Heavy Materials's agreement, there was "a statistically significant increase in prices . . . on both islands (after controlling for other factors) . . . ."[31] ███████████████████████████████████████.[32]

In October 2015, U.S. Concrete, Inc. acquired all of Heavy Materials's stock and exercised an option to purchase Spartan's assets.[33] Between the time the Defendants entered their agreement and U.S. Concrete's acquisitions, Spartan sold RMC to approximately 1,637 unique customers on St. Croix,

---

[23] *See*, *e.g.*, Exhibit 10, HM-GILBERT-005756.

[24] Exhibit 11, Bressi Depo. (8/31/16), at 39:22–40:3.

[25] *Id.* at 41:22-24 ("He was the one that told the operation what to sell concrete and don't go below this and sell it for this or do that. I do remember that.").

[26] *Id.* at 38:17-20 ("In fact I remember [Mosler] telling me once, I don't care if it takes me five million dollars a year for the next five years, we're going to going to break their backs and you don't worry.").

[27] *Id.* at 43:2-6.

[28] Exhibit 9, Spartan Rule 30(b)(6) Depo. (11/18/16), at 170:13–171:12.

[29] Exhibit 12, *Plaintiff Monrose Loctar's Responses to Defendants' First Set of Interrogatories*, at No. 2.

[30] Exhibit 13, *Deposition of Monrose Loctar* (3/31/2021), at 24:19–25:10.

[31] Exhibit 1, *Dalrymple Report*, at ¶ 67.

[32] *Id.* at Table 3 & ¶ 68.

[33] Exhibit 14, *Spartan's Answer & Affirmative Defenses to Plaintiffs' Revised Second Amended Complaint*, at ¶ 29 (Heavy Materials has "[a]dmitted that U.S. Concrete purchased all of Heavy Materials' stock."); and at ¶ 30 (Heavy Materials has admitted that "U.S. Concrete purchased Spartan's assets.").

Case: 3:19-cv-00117-RAM-RM   Document #: 89   Filed: 09/09/21   Page 6 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

and Heavy Materials sold RMC to approximately 1,003 unique customers on St. Thomas.[34]

## II. Class Definition, Exclusions, and Period

Plaintiff Loctar seeks certification of the following Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure: All persons who purchased RMC from Spartan Concrete Products, LLC on St. Croix or Heavy Materials, LLC on St. Thomas.

Excluded from the Class are: (1) Defendants, their co-conspirators, their respective parents, subsidiaries, and affiliates; (2) those who purchased RMC at a price that was negotiated and/or set prior to the Agreement.

The Class Period extends from the time Spartan and Heavy Materials entered into the Requirement Supply Agreement and Assignment of Lease through U.S. Concrete, Inc.'s acquisition of Heavy Materials and the assets of Spartan.

## III. Legal Standards

### a. Procedural Rules – Rule 23(b)(3) Class Actions

All classes must satisfy four prerequisites set forth in Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[35] Rule 23(b)(3) puts two other factors in play: (5) predominance (*i.e.*, "the questions of law or fact common to class members predominate over any questions affecting only individual members"); and (6) superiority (*i.e.*, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy").

The U.S. Supreme Court requires a "rigorous analysis" of each of the federal Rule 23 factors.[36] This analysis is "not to adjudicate the case" and "grants courts no license to engage in free-ranging

---

[34] Exhibit 15, FRE 1006 Summary of Transactions & Customers.

[35] Fed. R. Civ. P. 23(a).

[36] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 7 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

merits inquiries . . . ."[37] Although some merits discussion is inevitable, the purpose is not to conduct a mini-trial on the merits.[38]

The critical focus of class certification under Rule 23(b)(3) is predominance. "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[39] "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"[40]

### b. Substantive Law

Mr. Loctar asserts three claims for relief—violations of the Sherman Antitrust Act, the V.I. Antimonopoly Law, and the V.I. common law rule regarding Participating Agents. The first two are brought against Spartan, while the third is brought against Mr. Mosler.

#### i. Sherman Antitrust Act

The Sherman Antitrust Act "declare[s] illegal" "[e]very contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States . . . ." 15 U.S.C. § 3. Further, "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained . . . ." 15 U.S.C. § 15(a). "The elements . . . are (1) a violation of the antitrust laws . . . , (2)

---

[37] *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 & 466 (2013).

[38] *Id.* at 477.

*See also Amgen*, 568 U.S. 455, 477 (rejecting "Amgen's argument, [which] if embraced, would necessitate a mini-trial on the issue of materiality at the class-certification stage").

[39] *Amgen, Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

[40] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012) (internal quotation marks omitted)).

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 8 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

individual injury resulting from that violation, and (3) measurable damages. Importantly, individual injury (also known as antitrust impact) is an element of the cause of action; to prevail on the merits, every class member must prove at least some antitrust impact resulting from the alleged violation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (internal citations omitted).

Restraints on competition are typically evaluated under the "rule of reason", which requires the fact-finder to "weigh [] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49 (1977). The plaintiff must show the agreement produced adverse, anti-competitive effects within the relevant product and geographic markets. *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir. 1991). Increase in prices is an anticompetitive effect. *Id.* at 728.

As exception, horizontal nonprice restraints are presumptively illegal—or *per se* unreasonable. *Northern Pac. Railway Co. v. U.S.*, 356 U.S. 1, 5 (1958) ("[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."). Agreements by competitors to split territories fall within the *per se* category. *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) ("One of the classic examples of a per se violation of [Section] 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.")[41]

---

[41] *See also Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49–50 (1990) (division of market in Georgia bar review courses was *per se* unlawful) ("Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other.");

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) ("Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se without inquiry into the harm it has actually caused.");

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 9 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

### ii. V.I. Antimonopoly Law

The V.I. Antimonopoly Law provides, in pertinent part, "Every person shall be deemed to have committed a violation . . . who shall (1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person: . . . (c) allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service[.]"[42] Regarding standing, the Antimonopoly Law provides, in pertinent part: "Any person who has been injured in his business or property . . . by a violation . . . may maintain an action . . . for damages . . . against any person who has committed such violation.[43] Regarding its interpretation, the Antimonopoly Law provides that when its language "is the same or similar to the language of a Federal Antitrust Law, the District Court in constructing this chapter shall follow the construction given to the Federal Law by the Federal Courts."[44]

---

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007) ("A horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful." (citations omitted));

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 734 (1988) ("[A] horizontal agreement to divide territories is *per se* illegal.");

*In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 908 (6th Cir. 2003) (imposing *per se* liability on defendants who agreed that one would not enter into market in exchange for payments);

*Blackburn v. Sweeny*, 53 F.3d 825, 829 (7th Cir. 1995) (agreement between former law partners to restrict the geographical regions in which each could market their services post-dissolution was illegal);

*C-E Minerals, Inc. v. CARBO Ceramics, Inc.*, No. 1:11-CV-02574-JOF, 2012 WL 13008801, at *5 (N.D. Ga. Mar. 14, 2012) (granting preliminary injunction against enforcement of Supply Agreement, which required one competitor not to refrain from selling kaoline to proppant manufacturers, finding that plaintiff was, on a *per se* analysis, likely to succeed on the merits); and

*In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241 (N.D. Ala. 2018) (applied *per se* rule to alleged aggregation of competitive restraints by local health insurance plans, and national association of which plans were members).

[42] 11 V.I.C. § 1503(1)(c).

[43] 11 V.I.C. § 1507(2).

[44] 11 V.I.C. § 1518 ("When the language of this chapter is the same or similar to the language of a Federal Antitrust Law, the District Court in constructing this chapter <u>shall follow</u> the construction given to the Federal Law by the Federal Courts." (underline added)). "The use of the mandatory word

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

### c. V.I. Common Law—Participating Agent

The "Participation Theory" of liability is expressed in Section 343 of the Restatement (Second) of Agency *et seq.* and Section 7.01 of the Restatement (Third) of Agency *et seq.* One or both of those provisions reflect the common law of the U.S. Virgin Islands because they are sound rules.[45] At its essence "Liability under [the Participation Theory] attaches only where the corporate officer is an actor who participates in the wrongful acts." *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 622 (1983).

### IV. The Class should be certified. All six factors are satisfied.

### a. <u>Numerosity</u>: Joinder of 2,700 class members is impracticable.

Numerosity has traditionally been satisfied where the putative class "numbers in excess of forty".[46] A precise count is not required and may be estimated; however, a speculative count is

---

'shall' normally serves to create an obligation impervious to judicial discretion." *Shoy v. V.I*, 55 V.I. 919, 927 (V.I. Nov. 14, 2011). Other states with harmonization statutes with the word "shall" treat that command as binding. *See* § 10:5. *Are state antitrust laws required to follow comparable federal laws?*, LEGAL ASPECTS OF SELLING AND BUYING § 10:5 (3d ed.), at n.4 (collecting cases). *But see Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, No. ST-17-CV-77, 2017 WL 2709831, at *3 (V.I. Super. June 21, 2017) (holding that federal precedent is merely persuasive authority in the Section 1518 analysis).

[45] The V.I. Supreme court has not spoken, so upon *Banks* analysis, the Court should recognize the Participation Theory as V.I. common law. (i) <u>Prior V.I. Decisions</u>: Plaintiffs cannot locate any reported decisions from a local court. But at least four decisions from the District of the Virgin Islands, sitting in diversity, have said that agents may be liable to third-parties when they participate in their principles' wrongful conduct. *Addie v. Kjaer*, No. CIV. 2004-135, 2009 WL 1140006, at *2 (D.V.I. Apr. 28, 2009), *rev'd on other grounds*, 737 F.3d 854 (3d Cir. 2013); *Airlines Reporting Corp. v. Belfon*, No. CIV.A2003/146, 2010 WL 3664065, at *39 (D.V.I. Sept. 16, 2010); *Stotesbury v. Pirate Duck Adventure, LLC*, No. 3:11-CV-00018, 2011 WL 3843927, at *6 (D.V.I. Aug. 30, 2011). No V.I. court, whether territorial or federal, has articulated a contrary rule. (ii) <u>Other Jurisdictions</u>: The Participation Theory is the law in every U.S. jurisdiction. ***See* Exhibit 16, FRE 1006 Summary of Participating Agent Jurisprudence**. (iii) <u>Soundest Rule for the V.I.</u>: The Participation Theory deters laundering tortious and illegal conduct through the corporate form. In this case, a contrary rule would contravene the salutary legislative purpose of the Antimonopoly Law "to promote the unhampered growth of commerce and industry . . . by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ."[45]

[46] *Potter v. Citicorp.*, No. CIV. 1999/116, 2002 WL 31599974, at *4 (D.V.I. Apr. 4, 2002) (quotation omitted).

Case: 3:19-cv-00117-RAM-RM   Document #: 89   Filed: 09/09/21   Page 11 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

insufficient.[47] Spartan and Heavy Materials conducted approximately 7,740 transactions for the sale of RMC during the Class Period. Of those transactions, there were 1,003 unique customers of Heavy Materials on St. Thomas, and 1,637 unique customers of Spartan on St. Croix.[48]

### b. Commonality: Class members share common issues of law and fact.

This factor is easily met, as "[a] finding of commonality requires only a single question or fact common to the entire class."'[49] Factual differences are immaterial if even a single question of law exists.[50] Suffice it to say, there is at least one common question of fact or law in this action, and Plaintiff asks the Court to evaluate commonality at the same time as predominance.

### c. Typicality: Mr. Loctar's claims are typical of those of the Class.

Mr. Loctar's claims are typical of the Class because he overpaid for RMC just as did every other member of the Class. The test for typicality focuses on the legal claims brought—not on the factual circumstances of the class representative. "Factual differences will not defeat typicality if the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of class members and are based on the same legal theory."[51] Here, every putative class member overpaid for RMC from Heavy Materials and/or Spartan in violation of the Sherman Antitrust Act, the V.I. Antimonopoly Law, and the Participation Theory under V.I. common law.

### d. Adequacy: Mr. Loctar and his counsel will adequately represent the Class.

Mr. Loctar and his counsel will "fairly and adequately protect the interests of the Class." The requirements are two-fold: (1) adequacy of the proposed class representative requires that the named

---

[47] *Id.* (citations omitted).

[48] Exhibit 15, FRE 1006 Summary of Transactions & Customers.

[49] *Walmart v. Dukes*, 564 U.S. 338, 359 (2011).

[50] *Newberg, supra*, § 3:12 (presuming a class of 40+ members is sufficiently numerous).

[51] *Frank v. Gov't of Virgin Islands*, 2010 WL 1286077, at *3 (D.V.I. Mar. 31, 2010) (citation omitted).

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 12 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

plaintiff knows generally what the case is about and has no obvious conflict with the class; and (2) adequacy of proposed class counsel requires that counsel has the experience and ability to pursue the case zealously.[52] Regarding Mr. Loctar's adequacy, he understands the essential facts of the case,[53] and he also understands that he is acting as a representative for other customers who are not present in this litigation.[54] There is no obvious conflict between Mr. Loctar and the Class, as he can only recover if he succeeds on the legal theory that also leads to recovery for the Class. Regarding counsel's adequacy, the law firms of Burns Charest LLP and the Pate Law firm have the requisite experience and ability to pursue this action vigorously. Their background and experience is explored in greater detail below.

    e. **Predominance: Issues common to the Class predominate over issues individual to Mr. Loctar.**

On the predominance inquiry, "[T]he task for [Mr. Loctar] . . . is to demonstrate that" each essential element of his claims is "capable of proof at trial through evidence that is common to the class rather than individual to its members."[55]

The first element—**violation of the antitrust laws** (or the participation in that violation)—is "readily met" here.[56] Mr. Loctar will use common evidence to make his prima facie case. That evidence consists of Defendants' and Heavy Materials's written discovery responses, their documents, and their

---

[52] *Henry v. St. Croix Alumina, LLC*, Civ. No. 1999-0036, 2008 WL 2329223, at *8 (D.V.I. June 3, 2008).

[53] *See* Exhibit 13, Deposition of Monrose Loctar, at 29:16–30:17 (discussing the defendants) and 31:16-21 (discussing damages)

[54] *Id.* at 36:3–37:8.

[55] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009).

[56] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 13 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC, et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

witness's testimony.[57] *See* Section I, Statement of Facts, *supra*.

The second and third elements—**individual injury and measurable damages**—will also be shown by evidence common to the Class. Plaintiff's expert economist Scott Dalrymple conducted multiple regression analyses of Spartan and Heavy Materials's financial records.[58] Multiple regression analysis is a widely accepted econometric method.[59] This method "isolate[s] the impact of the anticompetitive activity on prices of RMC sold during the Relevant Period"[60] by accounting for non-collusive market factors that influence price, like "product characteristics and economic conditions."[61] Mr. Dalrymple ultimately concluded that "a statistically significant increase in prices in the Relevant Period on both islands (after controlling for other factors) is apparent . . . ."[62]

Mr. Dalrymple performed additional "regressions [to] allow for the possibility that price

---

[57] *See, e.g., In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("Evidence of a national conspiracy to fix the price of catfish and processed catfish would revolve around what the defendants did, and said, if anything, in pursuit of a price fixing scheme");

*Transamerican Refining Corp. v. Dravo Corp.*, 130 F.R.D. 70, 75 (S.D. Tex. 1990) (holding that proof of conspiracy is susceptible to generalized proof since focus is on what defendants did and said);

*In re Potash Antitrust Litig.*, 159 F.R.D. 682, 694 (D. Minn. 1995) ("Whether Defendants agreed to fix the price of potash between April 1987 and July 8, 1994, clearly involves questions common to the entire class. This element relates solely to Defendants' conduct, and as such proof for these issues will not vary among class members."); and

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present.").

[58] Exhibit 1, *Dalrymple Report*, at ¶¶ 57–75.

[59] *See, e.g., In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 218 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002) (explaining that multiple regression analysis is an accepted "method[] of showing "antitrust impact by generalized proof") (citations omitted).

[60] *Id.*

[61] *Id.* at ¶ 60.

[62] *Id.* at ¶ 67. ███████████████████████████████
███████████████████████ *Id.* at Table 3 & ¶ 68.

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 14 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

increases during the Relevant Period may have varied by product."[63] He concludes that these "regressions provide strong evidence of common harm to purchasers of RMC during the Relevant Period."[64] "Together, the econometric models provide strong evidence of statistically significant increased prices during the Relevant Period."[65]

The only individual issue is the measure of damages due each class member. But as Mr. Dalrymple explains, these damages are really a common issue because they are a product of his common model. This model permits the "comput[ation of] the extent to which each putative class member was injured as a result of Spartan's anticompetitive conduct. The overcharge calculations may be applied to purchases of RMC on each island and, if appropriate, for each product using a single economic framework that accounts for the common impact of Defendants' alleged anticompetitive behavior . . . ."[66]

  f. **Superiority: A class action is superior to other methods of resolution.**

A class action is the superior method of resolving this controversy. Rule 23(b)(3) prescribes a four-part test to make this assessment: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.[67]

This class action is a superior way to advance the nearly 2,700 claims. Individual claimants lack

---

[63] *Id.* at ¶ 69.

[64] *Id.* at ¶ 70.

[65] *Id.* at ¶ 75.

[66] *Id.* at ¶ 76.

[67] Fed. R. Civ. P. 23(b)(3)(A)–(D).

Case: 3:19-cv-00117-RAM-RM Document #: 89 Filed: 09/09/21 Page 15 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

an interest in controlling their individual cases, as most of the claims are likely to be negative value (*i.e.*, they would cost far more to litigate than they are actually worth). This factor cuts sharply in favor of class treatment.[68]

At bottom, "It is enough that class treatment is superior because it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.""[69] Maintenance of a class action should not present any difficulties that cannot be overcome by appropriate case management.

### V. Appointment of Class Counsel.

The Court should appoint Mr. Loctar's counsel from the law firm of Burns Charest LLP as lead counsel for the Class, and appoint the Pate Law Firm as co-lead counsel. The two law firms have the knowledge necessary to prosecute the claim on behalf of the Class, and they have already dedicated significant time and resources to pursuing the claims of Mr. Loctar and the Class without any guarantee of success or recovery.

Rule 23(g)(1) requires that, upon certification of a class, the Court "must appoint class counsel." In considering its appointment, the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"[70]

---

[68] *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available.").

[69] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (quoting *Amchem,* 521 U.S. at 615).

[70] Fed. R. Civ. P. 23(g)(1)(A).

Case: 3:19-cv-00117-RAM-RM   Document #: 89   Filed: 09/09/21   Page 16 of 18

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

To date, Burns Charest and the Pate Law Firm have done all of the work in identifying and investigating the claims alleged. Over the past several years, the firms have dedicated substantial time advancing the claims of the putative Class, both before this Court and the Superior Court. They have also expended considerable financial resources for the Class's benefit, including the engagement of Mr. Dalrymple for his economic expertise.[71] Counsel is committed to dedicating the time and resources necessary to see this case through final disposition.

Courts applying Rule 23(g) have placed great emphasis on proposed class counsel's experience and knowledge of the applicable law. Attorney Warren Burns has extensive experience in prosecuting large antitrust class actions, while Attorney Jacob Gower serves a lead role in the firm's litigation in the Complex Litigation of the V.I. Superior Court and has largely managed this action to date.[72] Attorney Pate has served as counsel and co-counsel in many impactful Virgin Islands cases, and represents hundreds of plaintiffs with active cases in the Complex Division of the Superior Court.[73]

## VI. Conclusion

A rigorous analysis of each of the Rule 23 factors demonstrates class certification is warranted in this case. Plaintiff Loctar's motion should be granted; the Class should be certified; Plaintiff Loctar should be named Class Representative, and Plaintiff Loctar's counsel should be named Class Counsel.

---

[71] Exhibit 17, Declaration of Warren T. Burns, Esq.

[72] Exhibit 18, Declaration of C. Jacob Gower, Esq.

[73] Exhibit 19, Declaration of J. Russell B. Pate, Esq.

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

**DATED:** September 1, 2021　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ C. Jacob Gower, Esq.
　　　　　　　　　　　　　　　　　Korey A. Nelson, Esq.
　　　　　　　　　　　　　　　　　C. Jacob Gower, Esq.
　　　　　　　　　　　　　　　　　BURNS CHAREST LLP
　　　　　　　　　　　　　　　　　365 Canal Street, Suite 1170
　　　　　　　　　　　　　　　　　New Orleans, LA 70130
　　　　　　　　　　　　　　　　　Telephone: (504) 799-2845
　　　　　　　　　　　　　　　　　Facsimile: (504) 881-1765
　　　　　　　　　　　　　　　　　knelson@burnscharest.com
　　　　　　　　　　　　　　　　　jgower@burnscharest.com

　　　　　　　　　　　　　　　　　J. Russell B. Pate, Esq.
　　　　　　　　　　　　　　　　　THE PATE LAW FIRM
　　　　　　　　　　　　　　　　　P.O. Box 370
　　　　　　　　　　　　　　　　　Christiansted, V.I. 00821-0370
　　　　　　　　　　　　　　　　　Telephone: (340) 777-7283
　　　　　　　　　　　　　　　　　Facsimile: (888) 889-1132
　　　　　　　　　　　　　　　　　pate@sunlawvi.com
　　　　　　　　　　　　　　　　　SunLawVI@gmail.com

　　　　　　　　　　　　　　　　　Warren T. Burns, Esq.
　　　　　　　　　　　　　　　　　Daniel H. Charest, Esq.
　　　　　　　　　　　　　　　　　BURNS CHAREST LLP
　　　　　　　　　　　　　　　　　900 Jackson Street, Suite 500
　　　　　　　　　　　　　　　　　Dallas, Texas 75202
　　　　　　　　　　　　　　　　　Telephone: (469) 904-4550
　　　　　　　　　　　　　　　　　Facsimile: (469) 444-5002
　　　　　　　　　　　　　　　　　wburns@burnscharest.com
　　　　　　　　　　　　　　　　　dcharest@burnscharest.com

*John St. Rose, et al. v. Spartan Concrete Products, LLC , et al.*
Memorandum of Law in Support of Motion to Certify a Rule 23(b)(3) Class

# CERTIFICATE OF SERVICE

I hereby certify that this document complies the page or word limitation set for in Rule 6-1(e) of the Virgin Islands Rules of Civil Procedure, and that on this 1st day of September, 2021, a copy of the foregoing was served by email on the following persons:

Scot F. McChain, Esq.
Mark W. Eckard, Esq.
McCHAIN HAMM ECKARD, LLP
5030 Anchor Way, Suite 13
Christiansted, St. Croix, VI 00820
scot@mcchainlaw.com
meckard@usvi.law

Yohana Manning, Esq.
MANNING LEGAL SERVICES PC
53A Company St., 2nd Floor
Christiansted, VI 00820
yohana05@gmail.com

Ronald W. Breaux, Esq.
Benjamin Goodman, Esq.
HAYNES BOONE
2323 Victory Ave., Ste. 700
Dallas, TX 75219
ron.breaux@haynesboone.com
benjamin.goodman@haynesboone.com

*Counsel to defendant Heavy Materials, LLC & former-defendant U.S. Concrete Inc.*

Christopher A. Kroblin, Esq.
Marjorie Whalen, Esq.
KELLERHALS FERBUSON KROBLIN PLLC
Royal Palms Professional Bldg.
9053 Estate Thomas, Suite 101
St. Thomas, VI 00802-3602
ckroblin@kellfer.com
mwhalen@kellfer.com

*Counsel to defendant Spartan Concrete, LLC & former-defendant Warren Mosler*

/s/ C. Jacob Gower, Esq.
C. Jacob Gower, Esq.