IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN
********************

| | |
|---|---|
| JOHN ST. ROSE, MONROSE LOCTAR, and DERRICK JAMES, individually and on behalf of all others similarly situated, | Case No. 3:19-CV-117 |
| Plaintiffs, | Class Action Requested |
| v. | Jury Trial Demanded |
| HEAVY MATERIALS, LLC, SPARTAN CONCRETE PRODUCTS, LLC, and WARREN MOSLER, | |
| Defendants. | |

**SPARTAN'S OPPOSITION TO**

**PLAINTIFF MONROSE LOCTAR'S MOTION TO CERTIFY A RULE 23(B)(3) CLASS**

**COMES NOW** Defendant **Spartan Concrete Products, LLC** ("Spartan"), by and through KELLERHALS FERGUSON KROBLIN PLLC, and hereby opposes Plaintiff Monrose Loctar's ("Loctar") Motion to Certify a Rule 23(b)(3) Class ("Motion to Certify") and in support thereof states as follows:

I.  **PLAINTIFFS' MOTION TO CERTIFY MUST BE DENIED BECAUSE RULE 23 REQUIREMENTS ARE NOT SATISFIED**

Plaintiff's Counsel, using Loctar as their pawn, have taken what was a sale of one company to another, on terms, and recast it as a market division case. Plaintiff himself has no idea what the Requirement Supply Agreement and the Assumption of Lease documents are or how they worked. Simply put, Heavy Materials, LLC ("Heavy Materials") bought out Spartan in what is best described as an acquisition. Heavy Materials, however, lacked the capital to pay for Spartan at the time of the buyout, but planned to soon obtain that capital by marketing both

companies to a singular buyer, which in fact is exactly what happened. The structure of the acquisition was that by entering the Requirement Supply Agreement and the Assumption of Lease, Heavy Materials obtained the option to purchase Spartan at very favorable terms. The option structure allowed security for Spartan to be sure it would ultimately get paid what was agreed, once Heavy Materials got paid for the sale of the companies. Ultimately, U.S. Concrete purchased Heavy Materials and exercised the option for the purchase of Spartan and the acquisition was complete.

Loctar's Counsel, however, recast the transaction as a market division case in the hopes of shaking down Heavy, Spartan, and Warren Mossler and filed suit against them in the Superior Court of the U.S. Virgin Islands. The heart of the case is based on the flawed assumption of a singular market with uniform consumers. That case is a mirror image of the instant case, which case was only brought as an untimely afterthought once Mr. Mosler was dismissed from the Superior Court case. Since the instant matter is barred by the statute of limitations it should be dismissed based on the pending motion for summary judgment. Should the Court, however, consider the Motion to Certify if should be denied because the Motion to Certify fails to show that the typicality or adequacy prerequisites of Rule 23 are met. Moreover, the additional Rule 23(b)(3) requirements of predominance and superiority are not satisfied. Accordingly, the Motion to Certify must be denied.

II.  **RELEVANT FACTS**

Immediately prior to the proposed class period, Spartan and Heavy Materials both sold ready-mix concrete in the Virgin Islands. Each company operated on the islands of St. Thomas and St. Croix. While they competed for some smaller and mid-size jobs, Heavy Materials was the ready-mix supplier for "the larger general contractors in the Virgin Islands." **Exhibit A**

(Gurlea Depo Tr.) at 25. Heavy Materials "had 95 percent of" "the large commercial projects" on St. Thomas. **Exhibit A** at 33-34. Heavy Materials "had a much larger fleet" of ready-mix concrete trucks than Spartan. **Exhibit A** at 23-24. Doug Gurlea, former principal of Heavy Materials, testified that "we also felt that our trucks were in much better condition." **Exhibit A** at 23-24.

Spartan had customers that varied in size, from individuals such as Loctar, to larger contractors who purchased larger volumes of ready-mix. **Exhibit B** (Pede Depo Tr.) at 140-141 (agreeing that Spartan gave lower prices to "medium-to-large customers who were buying more volume" as compared to customers who were buying a smaller volume).

At the end of 2013, Spartan and Heavy Materials entered into an agreement, the Requirements Supply Agreement, which was in fact a sales agreement as it gave Heavy Materials the option to purchase Spartan at below market value. **Exhibit C** (Requirements Supply Agreement). Therefore, Heavy Materials effectively owned both entities as a consequence of the Requirements Supply Agreement. Indeed, shortly thereafter Heavy Materials negotiated the sale of both itself and Spartan to US Concrete.

The proposed class representative here, Loctar, is an employee at the refinery on St. Croix who helped out friends with construction projects while the refinery was closed. **Exhibit D** (Loctar Depo. Tr.) at 9. During the class period, Loctar made a single purchase from Spartan for construction at his residence in Enfield Green of ready-mix 25 cubic yards of 3,000 PSI 6 Big Rocl 2 Pump. **Exhibit D** at 43, lns. 1-8.

St. Thomas and St. Croix are distinct markets. Concrete from St. Croix cannot be used on St. Thomas, and vice versa. **Exhibit E** (Jn-Marie Depo. Tr.) at 45, lns. 20-24. Loctar testified

that he lives on St. Croix, only purchased ready-mix there, and that he never checked the prices on St. Thomas for ready-mix. **Exhibit D** at p. 8, lns. 16-17; p. 34, lns. 13-15.

Loctar has no professional or business license and has never done commercial construction. **Exhibit D** Tr. p. 8, ln. 21 to p. 9, ln. 1; p. 11, lns. 10-18. Loctar always pays cash for ready-mix and he does not know if there is a price difference between paying by cash or credit. **Exhibit D** at p. 19, lns. 11-16. Loctar does not know if bigger customers got volume discounts. **Exhibit D** at p. 20, lns. 21-23. Loctar never negotiated a long-term contract for pricing for ready-mix. **Exhibit D** at p. 20, ln. 24 to p. 21, ln. 2. Loctar has never purchased 3,500 PSI, 4,000 PSI, or 6,000 PSI ready-mix. **Exhibit D** at p. 27, ln. 23 to p. 28, ln. 2.

Loctar was unaware that St. Thomas used a silo for cement and that St. Croix did not have a silo. **Exhibit D** at p. 34, lns. 16-22. St. Thomas gets its cement (a component of concrete) shipped in by vessel which is then stored in a silo, whereas St. Croix has no silo. **Exhibit F** (Arias Depo. Tr.) at p.10, ln. 8 to p. 14, ln. 2. The bulk cement available on St. Thomas is cheaper than the bagged cement sold for ready-mix on St. Croix. **Exhibit F** at p. 82, lns. 13-21.

Loctar testified that he considers both price and service when purchasing ready-mix, but "price is always better" than service, meaning price is the more important factor. **Exhibit D** at pg. 29, lns. 1-13. Loctar testified that he tried to negotiate on price when buying ready-mix but that he was told the price was the price. **Exhibit D**. at 19, ln. 22 to p. 20, ln. 4. Kurt Nose, the General Manager of Heavy Materials, testified that he was under the impression that Spartan engaged in negotiations with individual customers more often than selling ready-mix at list prices. **Exhibit G** (Nose Depo. Tr.) at 32. Likewise, Heavy Materials also had a list price but "[a]ll of the pricing was based on discounts to individual customers." **Exhibit G** at 32.

Spartan's manger testified that there "was a standard negotiation that [Spartan] went through on all jobs." **Exhibit H** (Spartan v. Argos Trial Tr. July 17, 2017) at 266. The manager described the process of a general contractor purchasing ready-mix from Spartan as a "negotiation process" in which "the final negotiations were always on . . . price." **Exhibit H** at 183. Additionally, for its medium-sized customers and larger customers, Spartan charged lower prices to customers who bought a "higher volume" of concrete. **Exhibit B** at 140. Linus Gilbert, a proposed class representative plaintiff in the mirror image Superior Court class action case, testified that he "[a]lways" asked for discounts when he purchased ready-mix. **Exhibit I** (Gilbert Depo Tr.) at 14.

During his deposition, Loctar testified that he was not aware of the Requirements Supply Agreement. **Exhibit D** at p. 31, lns. 22-24. Loctar further testified that he was unsure of the documents his lawyers showed him and that he does not get any billing statements from them nor know what is being spent to prosecute the case by his lawyers. **Exhibit D** at p. 37, ln. 15 to p. 38, ln. 10. Furthermore, Loctar does not have any documents or other evidence of his July 2015 purchase from Spartan. *See* **Exhibit J** at response to RFP No. 2 (page 1) and **Exhibit C** at pg. 44, lns. 3-16. Loctar also testified that he was unaware that that the Complaint brought in this case had been amended and that he was the only Plaintiff left in the case. **Exhibit D** at p. 31, lns. 12-15. As for damages, Loctar is not sure, but he testified that he believes its for the overprice he paid on two different occasions. **Exhibit D** at p. 31, lns. 16-21.

**III. REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23**

A motion for class certification is governed by Federal Rule of Civil Procedure 23, and Plaintiff's lawyers seek certification under Rule 23(b)(3).

Case: 3:19-cv-00117-RAM-RM Document #: 91 Filed: 10/01/21 Page 6 of 19

St. Rose v. Heavy Materials, LLC et al.                                        Case No. 3:19-cv-117
Opposition to Motion to Certify Class                                                         Page 6

Class certification is, however, proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (noting that "[a]lthough the Supreme Court in the quoted statement addressed Fed. R. Civ. P. 23(a), there is 'no reason to doubt' that the language 'applies with equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3).'") (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 33 n. 3 (2d Cir. 2006)). "In determining whether certification is appropriate, the Court looks at the individualized circumstances of the case and balances 'between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members.'" *Stanley v. St. Croix Basic Servs., Inc.*, No. CIV. 2003/0055, 2008 WL 4861448, at *5 (D.V.I. Nov. 3, 2008) (quoting Wright *v. Stone Container Corp.,* 524 F.2d 1058, 1061 (8th Cir. 1975)).

As set forth in the Motion to Certify, to obtain class action status, Plaintiffs must show that the proposed class meets the four (4) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable ("numerosity");
>
> (2) there are questions of law or fact common to the class ("commonality");
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

In addition to the four (4) prerequisites listed above, Plaintiffs must also satisfy the requirements set forth in Rule 23(b). Rule 23(b)(3) consists of two (2) additional elements: (1) predominance and (2) superiority.

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Bryan v. Gov't of the Virgin Islands*, No. CV 2014-97,

2017 WL 583140, at *1 (D.V.I. Feb. 13, 2017) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012)).

When confronted with a motion to certify a class, the Court must make findings; certification cannot rest on a mere threshold showing that the requirements of Rule 23 are met. *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008)). Therefore, the Court is required to 'resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.'" *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307).

### IV. PLAINTIFF FAILS TO MEET FOUR (4) OF THE PREREQUISITES FOR CLASS CERTIFICATION

As demonstrated below, Plaintiff's Motion fails to satisfy the basic typicality and adequacy prerequisites. Moreover, even if those prerequisites were satisfied (which they are not), the additional Rule 23(b)(3) requirements of predominance and superiority are not satisfied. Accordingly, the Motion to Certify must be denied.

**A. Plaintiffs' Motion Fails to Meet Typicality Prerequisite**

The typicality prerequisite under Rule 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "'ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Jarvis v. Gov't of Virgin Islands*, No. CIV.A. 07-117, 2009 WL 2242357, at *2 (D.V.I. July 22, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001), *as amended* (Oct. 16, 2001)). While perfect alignment of claims is not required, the "plaintiff's claim cannot be so different from the claims of absent class members that their

claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006) (stating that "when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification."). In analyzing the typicality requirement, the Court examines "whether the named plaintiff's 'individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Id*. (quoting *Newton,* 259 F.3d at 183).

Here, the sole proposed class representative, Loctar, made one (1) single ready-mix purchase on St. Croix during the class period. The purchase was for residential construction at his residence. Clearly, this purchase is not typical of purchasers purchasing ready-mix on St. Thomas, who had purchased ready-mix during the class period from another supplier (Heavy) providing a different customer service experience. Furthermore, not only did consumers on St. Thomas purchase from a different company, the price on St. Thomas is not related to the price on St. Croix as there was no competition between the markets. Moreover, cement, one of the key ingredients for concrete, is markedly cheaper on St. Thomas where a silo is used so that the cement can simply be offloaded directly from the ship. By contrast bagged cement was used on St. Croix creating additional packaging and shipping expenses, as well as processing the bag cement on St. Croix. Simply put, Loctar's experience of buying ready-mix on St. Croix is not typical of a consumer purchasing ready-mix in St. Thomas, which is a wholly separate market.

Not only is Loctar's singular alleged purchase of ready-mix in St. Croix not typical of a purchase in St. Thomas, Loctar never made any large or commercial purchases. Neither did he ever enter into any long-term pricing agreements. As set forth in the statement of facts above, large and mid-size customers frequently negotiated on price and sought volume discounts.

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 9 of 19

St. Rose v. Heavy Materials, LLC et al.                                          Case No. 3:19-cv-117
Opposition to Motion to Certify Class                                                          Page 9

In *Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006), the Fourth Circuit affirmed the District Court's finding that the typicality requirement was not satisfied where some customers purchased software at the list price and other larger customers negotiated the price in each transaction. The *Deiter* plaintiffs alleged Microsoft used its monopoly power to overcharge customers for operating software. *Id*. at 463. The plaintiffs paid fixed prices posted online by Microsoft. *Id*. at 467-68. In contrast, the proposed class included a group of customers ("Enterprise customers") who purchased at least two hundred fifty (250) software licenses. The Enterprise customers did not pay prices established in advance by Microsoft; instead, "[t]he prices that Enterprise customers paid were negotiated and, as a consequence, were both discounted and unique to each transaction." *Id*. at 468. The Fourth Circuit further found that "Enterprise customers purchased different products." *Id*. The Court concluded that proving "that Microsoft overcharged Enterprise customers would require new and different proof because the Enterprise customers were able to negotiate their deals in a different competitive context from that involving plaintiffs." *Id*.

Similarly, the purchasing experience of Spartan's medium and larger-sized customers was different from Loctar's one-off purchase experience. Spartan gave its medium and larger customers discounts based on the volume of ready-mix those customers purchased. Additionally, larger customers can pass the cost of ready-mix to their own clients. Customers that pass costs on to their own customers do not themselves suffer any financial harm. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005) (explaining that in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court of the United States "held . . . that direct purchasers are the only parties 'injured' in a manner that permits them to recover damages. The indirect purchaser plaintiffs were thus ineligible to

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 10 of 19

St. Rose v. Heavy Materials, LLC et al.                                        Case No. 3:19-cv-117
Opposition to Motion to Certify Class                                                       Page 10

recover damages for the passed-on overcharges."). Even if those customers who passed the cost of ready-mix on to their own customers could be included in the proposed class, those customers would pursue a different legal theory: their theory would be lost profits or lost market share, not the overcharge theory Plaintiff pursues here. *See, e.g., In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) (observing fact that "that West Bend may have passed on the full amount of the overcharge does not mean that it has not suffered any antitrust injury; (it may have lost market share or otherwise suffered reduced sales as a result of charging higher prices)."). These conflicting legal theories demonstrate that the class proposed here cannot satisfy the typicality factor. The proposed class is simply overbroad.

### B. Plaintiffs' Motion Fails to Meet Adequacy Prerequisite

The adequacy prerequisite is that the representative parties will fairly and adequately protect the interests of the class. "The test of adequate representation is whether the representative has a sufficient interest in, and nexus with, the class to insure vigorous prosecution of the action." *Stanley v. St. Croix Basic Servs., Inc.*, Civ. No. 2003/0055, 2008 WL 4861448, at *8 (D.V.I. Nov. 3, 2008) (quoting *In Re South Central States Bakery Products,* 86 F.R.D. 407, 417 (M.D. La. 1980)).

The adequacy factor is not met where the named plaintiff abdicates his role as representative of the class because in that situation "the attorneys, in essence, are the class representative." *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (explaining that "where the named plaintiffs 'have abdicated their role in the case beyond that of furnishing their names as plaintiffs,' the attorneys, in essence, are the class representative.") (quoting *Helfand v. Cenco,* 80 F.R.D. 1, 7–8 (N.D. Ill. 1977)). "[A] potential class is entitled to 'more than blind reliance upon even competent counsel by uninterested and inexperienced

representatives.'" *Id*. (quoting *In re Goldchip Funding Co.*, 61 F.R.D. 592, 594 (M.D. Pa. 1974)).  "Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  *Id*. (citing *Efros v. Nationwide Corp.,* 98 F.R.D. 703, 707 (S.D. Ohio 1983)); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 7 (N.D. Ill. 1977)*;* 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1766 pp. 310–11 (the "inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney.")); *see also* **Exhibit K** (ABA SECTION OF ANTITRUST LAW, ANTITRUST CLASS ACTIONS HANDBOOK at 145 (2d ed. 2018)) (explaining that courts have found a representative inadequate due to lack of sufficient interest where (a) "the representative lacks a material stake in the litigation"; (b) "if other factors suggest the party is litigating the action primarily for the benefit of the class attorney'" or (c) "the representative abdicates all responsibility for the litigation to the attorneys.").

Loctar lacks knowledge about the basics of this action and conceded that he does nothing to supervise the attorneys who seek to be certified as class counsel.  He testified he was unaware that the Complaint had been amended by his attorneys (invoking the question then upon what authority was it amended) and he did not realize he was the only proposed class plaintiff remaining in the case.

Furthermore, Loctar conceded he only purchased ready-mix on St. Croix and never looked at the prices on St. Thomas.  Additionally, Loctar knows nothing about the negotiation process and the ability to pass through costs to customers which larger purchasers enjoy.

Case: 3:19-cv-00117-RAM-RM Document #: 91 Filed: 10/01/21 Page 12 of 19

St. Rose v. Heavy Materials, LLC et al.  Case No. 3:19-cv-117
Opposition to Motion to Certify Class  Page 12

The core of Plaintiff's claim, as crafted by his attorneys, is that Spartan and Heavy Materials made an agreement not to compete which injured Plaintiff. Loctar, however, does not even know what the Requirements Supply Agreement is, and appears to be claiming injury for purchases both in and outside the class period, as he testified he is suing for being overcharged on two (2) separate occasions, testimony which conflicts with the Complaint. Of course, if he does claim being overcharged, both during and outside the class period, this could be helpful for the defense to discredit him at trial as being able to establish any overcharge caused by a market division. But the question before the Court now is whether he can adequately represent the proposed class, and clearly he is not adequate.

The whole basis of the lawsuit brought by Loctar is that Spartan and Heavy Materials entered into an unlawful agreement not to compete which resulted in Loctar and the proposed class paying higher prices for ready-mix than they otherwise would have absent the alleged agreement. Loctar's testimony, however, demonstrates that he does not understand the relationship between the alleged agreement and the prices charged for ready-mix. This alone demonstrates that the adequacy factor is not met. *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 502 (N.D. Ga. 2006) (finding that adequacy is not met where "[a]lthough Plaintiff is sufficiently familiar with the general nature of this lawsuit, he is unfamiliar with many of the specific allegations that form the basis for the claims under 15 U.S.C. § 1679b(a)(3). Indeed, as shown below, Plaintiff's deposition testimony establishes that he has never seen or cannot recall having seen virtually any of the representations that are enumerated in his Complaint and that form the basis of the claims under 15 U.S.C. § 1679b(a)(3).").

Loctar's lack of memory about facts relating to the core of the case – which purchase he is claiming he was overcharged for – may subject Loctar to a unique defense (lack of knowledge

or memory) which other class members may not be subject to. *See Jarvis v. Gov't of Virgin Islands*, No. CIV.A. 07-117, 2009 WL 2242357, at *3 (D.V.I. July 22, 2009) (noting that representative's unique legal position is as fatal to class certification as if he were subject to a unique defense."). Accordingly, because Loctar is subject to a unique defense with respect to his lack of knowledge of the underlying facts, he is not an adequate class representative. Truly he is worse than not adequate, he is a detriment to the entire class as he likely cannot articulate words sufficient to factually support the case being brought.

Finally, Loctar admitted he has not supervised his counsel in this case. He did not know an amended complaint was filed and did not know he was the only proposed class representative left in the case. While a representative is not required to know every detail of the case, the representative cannot simply be a puppet whose strings are wholly controlled by his attorneys. The representative must at least have sufficient interest in the matter to vigorously prosecute his claims. Loctar's testimony demonstrates that he is not an adequate class representative because he lacks basic knowledge about the case and he has abdicated his responsibilities to his counsel. Accordingly, Plaintiffs' Motion does not satisfy the adequacy factor and therefore the Motion to Certify must be denied.

### C. Plaintiffs' Motion Fails to Meet Predominance and Superiority Requirements

Rule 23(b)(3) provides that a class action may be maintained if the Rule 23(a) prerequisites are satisfied <u>and</u> if "the court finds that the questions of law or fact common to class members <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3) (emphasis added).

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 14 of 19

St. Rose v. Heavy Materials, LLC et al.                                                    Case No. 3:19-cv-117
Opposition to Motion to Certify Class                                                                    Page 14

1. **Predominance Requirement is Not Satisfied**

"Rule 23(b)(3)'s predominance requirements present a "far more demanding" standard than Rule 23(a)'s commonality requirement." *Frank v. Gov't of Virgin Islands*, Civ. No. 2009-66, 2010 WL 1286077, at *6 (D.V.I. Mar. 31, 2010) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).  The predominance factor requires that issues shared by the class as a whole "take precedence over individual issues." *Id*. (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 148 F.3d 283, 313–14 (3d Cir. 1998)).  "Given that the nature of the evidence necessary to determine an issue drives whether the issue is common to the class or individual, a district court must make some prediction as to how specific issues will present in order to make a decision about whether class-wide or individual issues will predominate in a matter." *Id*. (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311).

"[I]f one element of a claim can be proven only by resort to individual treatment, class certification is inappropriate." *Fayun Luo v. Qiao Xing Universal Res.*, No. CV 12-0045, 2017 WL 2470248, at *2 (D.V.I. June 6, 2017) (citing *Newton*, 259 F.3d at 172).  While "[p]roof of each element of a claim is not required," "plaintiffs seeking class certification 'must demonstrate that [each] element of [the cause of action] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311–12).

a) **The Ready-Mix Market on St. Croix is Wholly Distinct from the St. Thomas Market**

As a preliminary matter, Plaintiffs' Motion seeks certification of a class of all persons in the United States Virgin Islands who purchased ready-mix concrete directly from any defendant at any time during the Class Period (from December 2013 to October 2015).

The proposed class necessarily includes customers who purchased ready-mix on both St. Thomas and St. Croix. There are, however, vastly different markets and market conditions on St. Thomas and St. Croix. For example, access to cement, "one of the main components in the manufacture of ready-mix concrete", is markedly different. **Exhibit H** at 132. Cement is sold in "bulk" form and in "bagged" form. Bagged cement is more expensive than bulk cement. **Exhibit F** at 21. Only one (1) company, Argos USVI Corp. f/k/a Caricement USVI, Corp., supplies cement to St. Thomas. **Exhibit F** at pgs. 27-28. On St. Thomas, cement is available only in bulk form, through a silo. **Exhibit F** at 11. By contrast, there is no silo on St. Croix and no company which sells bulk cement. **Exhibit F** at pgs. 11-14 ln. 22. Instead, on St. Croix, cement is purchased in bagged form instead of bulk form and St. Croix is not limited to one (1) sole supplier of cement. **Exhibit G** at 121-122. Accordingly, the availability and conditions under which cement is purchased on St. Thomas and St. Croix are considerably different. These differences are significant because cement is one of the main components in the manufacture of ready-mix; therefore, the price and availability of cement shapes the environment in which ready-mix is manufactured on each island. The overbroad proposed class ignores the significantly differing conditions, competitive environments, and markets on St. Thomas and St. Croix. As the prices of ready-mix in each distinct market have no direct or indirect relationship, issues common to the class do not predominate issues unique to each market and each consumer.

**b) Loctar's Circumstances Demonstrate that Class Issues Do Not Predominate Over Individual Issues**

As set forth above in the analysis of the typicality factor, and why Plaintiff has failed to meet it, Loctar seeks to represent a class that includes small residential purchasers of ready-mix like himself, as well as medium and larger-sized purchasers, even though the medium and larger

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 16 of 19

St. Rose v. Heavy Materials, LLC et al.　　　　　　　　　　　　　　　　　　　　Case No. 3:19-cv-117
Opposition to Motion to Certify Class　　　　　　　　　　　　　　　　　　　　　　　　Page 16

purchasers purchased a higher volume of ready-mix and had access to negotiated and discounted prices. Customers who purchased ready-mix at negotiated prices are in a wholly different group than those such as Loctar who testified that he never successfully negotiated a discount price for ready-mix.

Additionally, contractors who are able to pass the cost of ready-mix to their own customers are not harmed, because they simply pass the cost of ready-mix, whatever it may be, to their customer. There is a split of authority on whether a Rule 23(b)(3) class is permitted to include unharmed members, however, the Third, Fifth, and Eighth circuits have held that the predominance requirement is not satisfied when the proposed class includes unharmed members.[1] Because "individual injury (also known as antitrust impact) is an element of the cause of action; to prevail on the merits, every class member must prove at least some antitrust impact resulting from the alleged violation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009). The injury requirement exists whether a plaintiff elects to bring suit as a proposed class action under Fed. R. Civ. P. 23 or otherwise. *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302–03 (5th Cir. 2003) ("Establishing causation, or

---

[1] *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302–03 (5th Cir. 2003) ("Establishing causation, or 'fact of damage', requires the plaintiff to demonstrate a causal connection between the specific antitrust violation at issue and an injury to the business or property of the antitrust plaintiff. This requirement is in no way lessened by reason of being raised in the context of a class action. Rather, this court has held that the issue of fact of damage 'is a question unique to each particular plaintiff and one that must be proved with certainty.' Accordingly, we have repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance.") (internal citations omitted);

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("Appellants allege a price-fixing conspiracy in violation of section one of the Sherman Act. For a class to be certified, plaintiffs need to demonstrate that common issues prevail as to the existence of a conspiracy and the fact of injury.")

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009) ("The elements of plaintiffs' claim are (1) a violation of the antitrust laws—here, § 1 of the Sherman Act, (2) individual injury resulting from that violation, and (3) measurable damages. Importantly, individual injury (also known as antitrust impact) is an element of the cause of action; to prevail on the merits, every class member must prove at least some antitrust impact resulting from the alleged violation.").

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 17 of 19

St. Rose v. Heavy Materials, LLC et al.                                    Case No. 3:19-cv-117
Opposition to Motion to Certify Class                                             Page 17

'fact of damage', requires the plaintiff to demonstrate a causal connection between the specific antitrust violation at issue and an injury to the business or property of the antitrust plaintiff."). If the proposed class includes members who suffered no injury, the class definition is deficient because it is too broad. Accordingly, Rule 23(b)(3)'s predominance requirement is not satisfied, and therefore certification must be denied, where the proposed class includes members who suffered no harm.

   2. **Superiority Requirement is Not Satisfied**

To satisfy the superiority requirement element, Plaintiffs must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3). Superiority requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication." *Frank v. Gov't of Virgin Islands*, Civ. No. 2009-66, 2010 WL 1286077, at *7 (D.V.I. Mar. 31, 2010) (quoting *Georgine v. Amchem Prods. Inc.,* 83 F.3d 610, 632 (3d Cir. 1996), *affirmed,* 521 U.S. 591 (1997)).

The superiority requirement is not satisfied here. A class action is not superior to other available methods for fairly and efficiently adjudicating the controversy, because the proposed class action does not meet the typicality and adequacy prerequisites and also fails to satisfy the predominance requirement. Accordingly, adjudicating the instant matter as a class action is not a superior method of adjudicating Plaintiff's claims.

Additionally, the same claims are being pursued in the mirrored Superior Court action where both Heavy and Spartan are defendants. That action is superior to this one as it does not suffer the same statute of limitations infirmity as the action does here. Moreover, if Plaintiffs are to pursue a singular market theory or a theory that damages for alleged overcharges on both

islands can be pursued then it makes more sense that both suppliers be included in the lawsuit. Lastly, since the Superior Court proposed class is the same as the proposed class in this action, it makes no sense for this second action to go forward because even though pursued under a separate but nearly identical legal theory, the Plaintiffs can't recover twice. Accordingly, this second action is a futile waste of time.

V. **CONCLUSION: PLAINTIFF'S MOTION TO CERTIFY MUST BE DENIED**

Rule 23 requires that Plaintiff meet certain requirements before he can prosecute a class action. Among those requirements are typicality, adequacy, predominance, and superiority. None of these requirements are met. Loctar's claim is not typical of the class members' claims because the proposed class includes purchasers of ready-mix who, unlike Loctar, negotiated the price of ready-mix, obtained discounts, and passed the cost of ready-mix through to their own customers. Additionally, Loctar is not an adequate class representative. Even if Loctar could show that the typicality and adequacy factors were satisfied, he has failed to demonstrate that the predominance and superiority requirements are met. Here, issues common to class do not predominate over individual issues because the class consists of small, medium, and large purchasers of ready-mix wherein the medium and large purchasers could and did negotiate the price of ready mix and obtain volume discounts. To summarize as another court already has:

> There are significant differences between the markets for Concrete throughout the different geographic regions of [the Virgin Islands], between large-volume and small-volume purchasers, and between customers who have long-standing relationships with suppliers and those who do not. In addition, the price of Concrete is affected by numerous other individual factors including the specific mix of the Concrete and the proposed end-use of the product… . Plaintiffs have not satisfied *their burden* of showing that the alleged antitrust impact is susceptible to common proof at trial.

*In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23187-CIV, 2012 WL 27668, at *16 (S.D. Fla. Jan. 3, 2012) (emphasis added).

Case: 3:19-cv-00117-RAM-RM   Document #: 91   Filed: 10/01/21   Page 19 of 19

St. Rose v. Heavy Materials, LLC et al.	Case No. 3:19-cv-117
Opposition to Motion to Certify Class	Page 19

Because the typicality, adequacy, and predominance factors are not met, the superiority requirement, which requires a showing that a class action is a superior method to adjudicate the claims, is also not satisfied, as demonstrated above, many of the proposed class members were not even actually harmed. Accordingly, Plaintiffs' Motion to Certify must be denied.

        Respectfully,

Dated: October 1, 2021

/s/ Christopher Allen Kroblin
**CHRISTOPHER ALLEN KROBLIN, ESQ.**
**MARJORIE WHALEN, ESQ.**
V.I. Bar Nos. 966 and R2019
KELLERHALS FERGUSON KROBLIN PLLC
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, V.I. 00802
Telephone: (340) 779-2564
Facsimile: (888) 316-9269
Email: ckroblin@kellfer.com
      mwhalen@kellfer.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of October, 2021, a true and exact copy of the foregoing **Opposition to Motion to Certify Class** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Korey A. Nelson, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
knelson@burnscharest.com
mhenry@burnscharest.com

J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 890
St. Thomas, V.I. 00804
pate@sunlawvi.com
sunlawvi@gmail.com        /s/ Christopher Allen Kroblin