DISTRICT COURT OF THE U.S. VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| **Monrose Loctar, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff,*<br><br>v.<br><br>**Spartan Concrete Products, LLC, and Warren Mosler**<br><br>*Defendants.* | Case No. 3:19-cv-00117<br><br>**Jury Trial Demanded**<br><br>**Putative Class Action** |

### PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION MOTION TO CERTIFY A RULE 23(b)(3) CLASS

Defendants cast their conduct as a legitimate transaction; Plaintiff disagrees. But on the present motion, the Court need not concern itself with who – if anyone – is right. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 & 466 (2013) (explaining that purpose is "not to adjudicate the case" and Rule 23 "grants courts no license to engage in free-ranging merits inquiries . . . ."). Rather, the limited focus for this procedural motion is the "rigorous analysis" of the four certification factors on which the parties disagree – *typicality*, *adequacy*, *predominance*, and *superiority*.[1] Each is addressed in turn, with typicality and predominance considered together.

1. **Typicality & Predominance**

Spartan objects that Plaintiff's claims are not typical of that of the class, nor that common issues predominate, for two reasons:

(a) The geographic markets for RMC in St. Thomas and St. Croix are separate and distinct, and Plaintiff did not purchase RMC on St. Thomas. *See* Opp. [Doc. 91] at 8 (typicality discussion) & 14–15 (predominance discussion)];

(b) Plaintiff did not make large or commercial purchases or negotiate long-term pricing agreements. *See* Opp. at 9–10 (typicality discussion) & 15–17

---

[1] Defendants do not challenge Plaintiff's showing on *numerosity* or *commonality*.

(predominance discussion). That matters, as Defendants explain, because (i) larger customers received volume discounts [Opp. at 9]; (ii) large commercial customers can pass on the increased cost for RMC to their customers [Opp. at 9 –10]; and (iii) customers who pass on overcharges are not injured. Opp. at 16.

These objections are misplaced and should be overruled.

> a. **Despite differences in access to cement between St. Croix and St. Thomas, the legal claim of a customer on St. Croix is typical of the legal claims of customers on both St. Croix and St. Thomas. Any individual issues do not predominate because they are resolved by Mr. Dalrymple's common economic model.**

Defendants argue that St. Thomas and St. Croix markets are different because of the nature of the operations on the respective islands. They focus on the difference between how each island purchased and received cement – an ingredient of RMC.

This alleged difference is divorced from the typicality inquiry. "Differing purchasing methods and prices do not necessarily defeat a finding of typicality . . . , provided that the alleged misconduct applies across the array of methods and prices." *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 171, 180 (E.D. Pa. 2015) (citing *Marcus v. BMW of N. America, LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."); additional citations omitted).

Plaintiff alleges that he paid supra-competitive prices for RMC because the Defendants agreed to divide the islands. Any difference in how cement was procured is a superficial one, especially in evaluating whether his legal *claims* are typical of the legal *claims* of absent class members.

At bottom, differences between cement availability and procurement on St. Croix and St. Thomas is a question of input cost – that is, how much it costs to manufacture RMC. To the extent that there were differences in input cost that affected the prices paid by class members, Economist Scott Dalrymple's model expressly accounts for these differences in demonstrating both antitrust injury and damage. *See* Doc. 89-1 at ¶¶ 61, 73 (current version redacted pending resolution of Plaintiff's

motion to file under seal). In its opposition, Spartan does not acknowledge Mr. Dalrymple's expert report, does not challenge the soundness of his methodology, and does not dispute the reliability of his conclusions.

> **b. Even though Plaintiff is a single small customer, his claims for relief are typical of all class members – including customers that made large purchases, paid a negotiated discount rate, or passed on their overcharges. The individualized purchasing decisions of class members do not predominate because they are resolved by Mr. Dalrymple's common economic model.**

Defendants argue that "the purchasing experience of Spartan's medium and larger-sized customers was different from Loctar's . . . [because] Spartan gave [the former] discounts based on the volume of [RMC] . . . purchased." Opp. at 9. As support, Defendants cite *Dieter*, *Illinois Brick*, and *In re Methionine Antitrust Litigation*. The argument is wrong on the facts and law, and the citations do not support Defendants' position. Plaintiff addresses them in six parts.

**First**, Defendants are wrong on the facts. As Spartan admitted in written discovery, "Spartan did not offer discounts during the Class Period." *See* Doc. 81-10, at RFP Nos. 13 & 15 (pp. 5 & 6), Interrogatory No. 2 (p. 15). Nor is there any evidence that Heavy Materials offered discounts during the class period. Exhibit 1, Deposition of Kurt Nose, September 20, 2016, 104:2-18 (testifying that Heavy Materials was better able to maintain list price during the class period). Indeed, all of the evidence that Defendants cite regarding negotiated discounts is specific to the pre-class period.

**Second**, whether Spartan or Heavy Materials sold RMC at a discount from list price is legally insignificant. *See In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 171, 180 (E.D. Pa. 2015) (string cite omitted). Customers of RMC paid an inflated rate during the Class Period regardless of whether they were big or small, paid the list price or a negotiated a price. As Mr. Dalrymple explained in his report (again, which Defendants ignored), the Defendants' agreement "enhanced Spartan's and Heavy Materials's market power on St. Croix and St. Thomas, respectively. . . [and] damages arise to customers from the effects of the anticompetitive act on the price of [RMC]." *See* Doc. 89-1 (redacted

pending motion to file under seal) at ¶ 50.

**Third**, as a matter of law, Defendants are not entitled to a "pass-on" defense. The U.S. Supreme Court was unequivocally clear on this point in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968). In that case, the defendant "[sought] to limit the general principle that the victim of an overcharge is damaged within the meaning of [Section 4 of the Sherman Act] to the extent of that overcharge." *Id.* at 491. The defendant argued the rule "should be subject to the defense that economic circumstances were such that the overcharged buyer could only charge his customers a higher price because the price to him was higher," and that "in such circumstances the buyer suffers no loss from the overcharge. . . ." *Id.* at 492. The Court expressly rejected the defendants' proposed rule, noting: "We are not impressed with the argument that sound laws of economics require recognizing this defense." *Id.* It concluded "that [the plaintiff] proved injury and the amount of its damages for the purposes of its treble-damage suit when it proved that [the defendant] had overcharged it during the damage period and showed the amount of the overcharge; [the defendant] was not entitled to assert a passing-on defense." *Id.* at 494.[2]

**Fourth**, in their opposition, Defendants cite to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) as authority for the proposition that some class members were not injured because they were able to

---

[2] *See also id.* at 489 ("If in the face of the overcharge the buyer does nothing and absorbs the loss, he is entitled to treble damages. This much seems conceded. The reason is that he has paid more than he should and his property has been illegally diminished, for had the price paid been lower his profits would have been higher. It is also clear that if the buyer, responding to the illegal price, maintains his own price but takes steps to increase his volume or to decrease other costs, his right to damages is not destroyed. Though he may manage to maintain his profit level, he would have made more if his purchases from the defendant had cost him less. We hold that the buyer is equally entitled to damages if he raises the price for his own product. As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower."); and

*In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("[D]efendants incorrectly assume that if a class member offsets an overcharge through later savings attributable to the same or related transaction, there is no injury. But antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset.").

pass on any overcharge to an end consumer. Opp. at 9–10. But Defendants' interpretation of *Illinois Brick* is wrong. The U.S. Supreme Court did not hold that class members who pass on overcharges have not suffered an antitrust injury. Rather, *Illinois Brick* addressed whether the Sherman Act affords standing to indirect purchasers – instead of or in addition to direct purchasers – to recover treble damages for an illegal overcharge. 431 U.S. at 727; *see also id.* at 728 (noting that certiorari was granted to "resolve a conflict among the Courts of Appeals on the question whether the offensive use of pass-on . . . is consistent with *Hanover Shoe*'s restrictions on the defensive use of pass-on."). Indeed, *Illinois Brick* acknowledged *Hanover Shoe* as binding authority. *Id.* at 720 ("In *Hanover Shoe* this Court rejected as a matter of law this defense that indirect rather than direct purchasers were the parties injured by the antitrust violation."). It did not overturn *Hanover Shoe*. *Id.* at 729 ("[W]e decline to abandon the construction given s 4 in *Hanover Shoe* that the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the [injured] party . . . ."). And it would compel the same result has the plaintiff in *Illinois Brick* was a direct purchaser. *Id.* at 735 ("[R]espondents seek to demonstrate that masonry contractors, who incorporated petitioners' block into walls and other masonry structures, passed on the alleged overcharge on the block to general contractors, who incorporated the masonry structures into entire buildings, and that the general contractors in turn passed on the overcharge to respondents in the bids submitted for those buildings. We think it clear that under a fair reading of *Hanover Shoe* petitioners would be barred from asserting this theory in a suit by the masonry contractors.").

**Fifth**, Defendants' citation to *Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) is misplaced. They argue *Deiter* stands for the proposition that a class representative's claims are not typical of the class where the class includes customers that negotiated prices and those that did not. Opp. at 9. But *Deiter* was a monopolization claim under Section 2 of the Sherman Act – not a Section 1 conspiracy claim as alleged here. 436 F.3d at 467.

In a Section 2 case, "proof of plaintiffs' claims [do] not depend on whether all defendants participated in the same conspiracy, but rather on whether defendant possessed sufficient market power *in the relevant market*. Issues related to proof of the relevant market depend on the particular categories of products and distribution channels at issue in a way that proof of participation in a section 1 conspiracy does not." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *5 (N.D. Cal. June 5, 2006) (citation omitted). Because proof of sufficient market power is not relevant to Plaintiff's case here, this distinction Defendants draw between *negotiated* and *non-negotiated* transactions is not relevant to the class certification analysis.

**Sixth**, Defendants' citation to *In re Methionine Antitrust Litigation*, 204 F.R.D. 161 (N.D. Cal. 2001) is just as misplaced. There, the plaintiffs were indirect purchasers, meaning they did not purchase the product from the original seller. *Id.* at 162. The plaintiffs brought action pursuant to Wisconsin's *Illinois Brick* repealer-statute, which affords indirect purchasers a state law remedy for the damages they sustain. *Id.* Some putative class members resold the product to others in the product's original form or as part of a value-added product. *Id.* at 164. The question the court faced was what damage, if any, an indirect purchaser sustains when the product is again resold, and if they did sustain damage, whether it could be reliably calculated on a classwide basis. *Id.* at 164.

The facts of this case are distinct, and the challenges presented in *In re Methionine* are absent. Here, Plaintiff is a direct purchaser, not an indirect purchaser, as are all putative class members. He (and the putative class) do not seek relief pursuant to any *Illinois Brick* repealer-statute.

2. **Adequacy.**

Defendants object to adequacy on three bases: (1) Plaintiff is subject to a "unique defense" because he cannot recall certain details regarding his purchases of ready-mix concrete. (2) Plaintiff does not supervise his legal counsel. (3) Plaintiff does not understand certain aspects of this litigation. All three should be rejected.

a. **Plaintiff understands the fundamentals of this class action.**

Defendants object that Plaintiff is an inadequate class representative because he does not know certain details of this case. This argument should be rejected legally and factually.

**Legally**, Defendants interpretation of adequacy is both dated and foreign to the Third Circuit. Contrary to the Eleventh Circuit standard Defendants prefer, "A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).[3]

**Factually**, Defendants' scattershot arguments are not based on a fair interpretation of the evidence in the record:

| Argument | Response |
|---|---|
| "Loctar lacks knowledge about the basics of this action." Opp. at 11. | Plaintiff provided detailed testimony on his purchase of RMC from Spartan and what he used the ready-mix concrete for. He understands the central allegations of this litigation – (i) the two sellers of ready-mix concrete in the Territory conspired with one another to divide the market, and that as a result of that conspiracy, and (ii) he paid more for ready-mix concrete than he would have in a competitive environment and can recoup the difference. *See* Exhibit 2 at 25:14–26:5, 31:16-20 & 33:5-15. |

---

[3] *See also In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 213 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002) ("[T]he adequacy–of–representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel."); and

*In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 171, 180–81 (E.D. Pa. 2015) ("Plaintiffs also invoke a litany of evidence establishing that the class representatives have reviewed the complaint, understand the general nature of the allegations, and have participated in the litigation by reviewing pleadings and discovery, searching through their own files, providing information about the case, meeting with counsel, and sitting for depositions. This is sufficient knowledge and participation for Rule 23 purposes.").

| | |
|---|---|
| "Loctar knows nothing about the negotiation process . . . ." Opp. at 11. | That is not accurate. Consider this colloquy from Plaintiff's deposition:<br><br>Q. Okay. And are you ever able to negotiate price with the -- with any of the sellers of ready-mix?<br><br>A. Yeah, you try and go there sometimes and you tell them you want 20 yards, if you could get it cheaper, and most of the time, no luck.<br><br>Q. Okay. Have you ever negotiated a cheaper price?<br><br>A. Yeah, I've asked, but they said the price is the price.<br><br>Exhibit 2, at 19:22–20:4. |
| "Loctar knows nothing about . . . the ability to pass through costs to customers which larger purchasers enjoy." Opp. at 11. | There is no citation to any evidence for this claim, either in Defendants' factual background or argument.<br><br>Nor is this argument relevant. That's *Hanover Shoe*. |
| "Loctar . . . does not even know what the Requirements Supply Agreement is . . . ." Opp. at 12. | That is not accurate. *See* Doc. 81-5 (Declaration of Monrose Loctar) ("I am familiar with the Requirement Supply Agreement. I misunderstood Defendants' one question about it at my deposition."); *see also* Doc. 81 at 8 (Response to Defendants' Motion for Summary Judgment) and Doc. 81-1 (Counter-SUMF 11). |
| Loctar "does not understand the relationship between the alleged agreement and the prices charged for [RMC]." Opp. at 12. | Again, that is not accurate. Loctar testified that he thought prices for RMC were high because there was only one supplier of RMC. *See* Exhibit 2, at 26:2-4. |
| "Loctar . . . appears to be claiming injury for purchases both in and outside the class period, as he testified he is suing for being overcharged on two (2) separate occasions . . . ." Opp. at 12. | Plaintiff does not claim that he he sustained an antitrust injury for two different purchases of RMC. Rather, he sustained an antitrust injury for his purchase of RMC on July 7, 2015, which was during the class period. *See* Doc. 89-12 (Response to Defendants' Interrogatory No. 2). |

Plaintiff is not a lawyer, has never been a class representative, and has no knowledge of antitrust law beyond that taught to him by his legal counsel. To the extent that Plaintiff did not know

certain details of this case, Defendants' questions were more of a pop-quiz than about gauging his understanding of this action's fundamentals.

### b. Plaintiff's claims are not subject to a "unique defense".

Defendants objects that Plaintiff does not recall certain details of his purchases of ready-mix concrete. Opp. at 12–13. They cite *Jarvis v. Gov't of Virgin Islands*, CIV.A. 07-117, 2009 WL 2242357, at *3 (D.V.I. July 22, 2009), for the proposition that this is a "unique defense" that destroys adequacy. Opp. at 13. *Jarvis*, in turn, cites *Beck v. Maximus, Inc.* for the proposition "that where the named plaintiff faces a unique defense, typicality and adequacy of representation are both likely to be destroyed out of a concern that the named plaintiff will devote inordinate attention to issues unrelated to the class and at the expense of class members' best interests." 457 F.3d 291, 296–97 (3d Cir. 2006).

This objection fails for three reasons: (1) *Lack of knowledge* is not a defense. That stands in contrast to *Beck*, where the court was presented with a recognized legal defense of *bona fide error* under the Fair Debt Collection Practices Act. 457 F.3d 291, 297. (2) Even if *lack of knowledge* is a defense, it's not unique to Mr. Loctar. Defendants have adduced no evidence that Mr. Loctar has any more or less knowledge about his transactions for RMC and the market for RMC in the Virgin Islands than any other putative class member. (3) And even if *lack of knowledge* is a defense unique to Mr. Loctar's claims, it shouldn't defeat certification here. Defendants have failed to show that there is "some degree of likelihood [this allegedly] unique defense will play a significant role at trial." *Id.* at 300. That's because the overwhelming bulk of the evidence that will be adduced a future trial will revolve around Defendants' conduct – not Plaintiff's exacting memory of his purchase of RMC in 2015 or his personal impressions of the marketplace.

### c. Plaintiff is reasonably apprised of the happenings of this case.

Defendants argue that Plaintiff is a "puppet" of counsel because does not "supervise[] his counsel", "did not know and amended complaint was filed[,] and did not know he was the only

proposed class representative left in the case." Opp. at 13; *see also* Opp. at 11. In support of their position, Defendants cite *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987). Neither these arguments nor *Kirkpatrick* render Plaintiff an inadequate class representative.

**First,** *Kirkpatrick* is not the law of this jurisdiction. As noted above, *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) controls.

**Second**, insofar as the *Kirkpatrick* standard is persuasive, it does not necessitate Defendants' conclusion that Plaintiff is a "puppet". Counsel routinely apprises Plaintiff of the happenings in this case, and in turn, Plaintiff has entrusted his legal counsel – as he is perfectly entitled to do – with managing legal strategy. *Kirkpatrick*, 827 F.2d at 728 ("[T]o require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights."). Plaintiff is not a lawyer, and he has zero experience or training in managing and prosecuting antitrust cases or class actions. This is precisely why the adequacy inquiry doesn't just look to the adequacy of the named-plaintiff, but also that of class counsel. *Id.* ("[H]ere the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs . . . .").

3. **Superiority**

Defendants raise four arguments with regard to superiority: (i) "A class action is not superior to the other available methods . . . because the proposed class does not meet the typicality and adequacy prerequisites and also fails to satisfy the predominance requirement." Opp. 17; (ii) The Superior Court action "does not suffer the same statute of limitations infirmity as the action does here." Opp. at 17; (iii) "[I]f Plaintiffs are to pursue a singular market theory or a theory that damages for alleged overcharges on both islands can be pursued then it makes more sense that both suppliers be included in the lawsuit." Opp. at 17–18; and (iv) "[S]ince the Superior Court proposed class is the same as the proposed class in this action, it makes no sense for this second action to go forward

because even though pursued under a separate but nearly identical legal theory, the Plaintiffs can't recover twice." Opp. at 18. Each argument should be rejected.

As to the **first** argument, superiority is not derivative of the other elements for certification. If Plaintiff cannot show typicality, adequacy, or predominance, then the motion to certify should be denied on that basis alone. There is no reason to engage in redundant analysis.

As to the **second**, **third**, and **fourth** arguments, they should be automatically rejected because Defendants failed to include them in response to Plaintiff's contention interrogatory or timely supplement. *See* Doc. 81-10, Response to Interrogatory No. 13 (p. 19) (Q. "Identify the principle and/or material facts that inform your denial of paragraph 37 of the First Amended Complaint regarding the superiority of class treatment." A. "The superiority requirement is not satisfied here because the predominance requirement is not satisfied.").

Rule 37 treats an "incomplete . . . answer [to an interrogatory] . . . as a failure to . . . answer . . . ." Fed. R. Civ. P. 37(a)(4). A failure to answer may warrant, among other remedies, "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii) (applicable via Fed. R. Civ. P. 37(c)(1)). "If a party fails to [supplement an interrogatory response] as required by Rule [26(e)], the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(d)(3).

As to the merits of the **second** argument, there is no statute of limitations "infirmity". *See* Doc. 81 (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment). On the federal Sherman Act claim, there are triable questions of fact regarding the applicability of the doctrine of fraudulent concealment. And both territorial law causes of action are timely because they benefit from two tolling principles – the discovery rule and inter-jurisdictional class tolling.

As to the merits of the **third**, there is no authority cited for the proposition that Heavy Materials's absence matters. If Defendants have any remedy, it lies in a Rule 12(b)(7) motion for failure to join a required party. Any such motion is likely to fail, however, particularly where, as here, Defendants are jointly and severally liable under both federal and territorial law for the damages they and their co-conspirators caused. Defendants' desire to litigate *with Heavy Materials* in the same action is but a preference – not a legal necessity.

As to the merits of the **fourth**, there is no authority for the proposition that the existence of similar ongoing litigation in the Superior Court matters. Further, this action is unique in several respects: (i) The Superior Court lacks subject matter jurisdiction to hear the Sherman Act claim as federal courts have exclusive jurisdiction. *See Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287 (1922) and Doc. 27 (Plaintiffs' Opposition to Defendants' Motion to Dismiss for Failure to State a Claim), at 2–4 (noting federal courts' exclusive federal jurisdiction, and explaining why Plaintiffs claims were not "split" because of the "prior judicial competency rule"); (ii) No class has been certified in the Superior Court action. *See* Exhibit 3 (Declaration of C. Jacob Gower Esq.); and (iii) Mr. Mosler is not presently a defendant in the Superior Court action. *See id.*

*****

WHEREFORE, Plaintiff prays his motion is granted; that the proposed class be certified; and that Plaintiff's counsel be appointed class counsel.

| | |
|---|---|
| **DATED:** October 15, 2021 | Respectfully submitted,<br><br>/s/ C. Jacob Gower, Esq.<br>Korey A. Nelson, Esq.<br>C. Jacob Gower, Esq.<br>BURNS CHAREST LLP<br>365 Canal Street, Suite 1170<br>New Orleans, LA 70130<br>Telephone: (504) 799-2845<br>Facsimile: (504) 881-1765<br>knelson@burnscharest.com<br>jgower@burnscharest.com<br><br>J. Russell B. Pate, Esq.<br>THE PATE LAW FIRM<br>P.O. Box 370<br>Christiansted, V.I. 00821-0370<br>Telephone: (340) 777-7283<br>Facsimile: (888) 889-1132<br>pate@sunlawvi.com<br>SunLawVI@gmail.com<br><br>Warren T. Burns, Esq.<br>Daniel H. Charest, Esq.<br>BURNS CHAREST LLP<br>900 Jackson Street, Suite 500<br>Dallas, Texas 75202<br>Telephone: (469) 904-4550<br>Facsimile: (469) 444-5002<br>wburns@burnscharest.com<br>dcharest@burnscharest.com |

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2021, a copy of the foregoing was served by on all counsel of record through the CM/ECF portal.

/s/ C. Jacob Gower, Esq.