## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN
*********************

| | |
|---|---|
| **JOHN ST. ROSE, MONROSE LOCTAR, and** ) | |
| **DERRICK JAMES, individually and on behalf** ) | **Case No. 3:19-CV-117** |
| **of all others similarly situated,** ) | |
| ) | **Class Action Requested** |
| **Plaintiffs,** ) | |
| ) | **Jury Trial Demanded** |
| **v.** ) | |
| ) | |
| **HEAVY MATERIALS, LLC, SPARTAN** ) | |
| **CONCRETE PRODUCTS, LLC, and** ) | |
| **WARREN MOSLER,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### SPARTAN CONCRETE PRODUCTS, LLC AND WARREN MOSLER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COME NOW** Defendants **SPARTAN CONCRETE PRODUCTS, LLC** ("Spartan") and

**WARREN MOSLER** ("Mosler"), by and through Kᴇʟʟᴇʀʜᴀʟs Fᴇʀɢᴜsᴏɴ Kʀᴏʙʟɪɴ PLLC, and

hereby submit the instant Memorandum in Support of their Motion for Summary Judgment, which

demonstrates that summary judgment must be entered in favor of Spartan and Mosler on the

ground that the First Amended Complaint [D.E. 37] is barred by the statute of limitations.

**I.    Facts Show Action Must be Dismissed Because it is Barred by the Four (4) Year
       Statute of Limitations.**

Monrose Loctar[1] claims he purchased ready-mix concrete from Spartan on July 7, 2015.

SOF at ¶ 1.  Loctar further alleges he purchased concrete from Heavy Materials and Mark 21 but

"[h]e cannot recall any particular dates, purchases, volume purchased, price per cubic yard, or

---

[1] By Order dated March 24, 2022, John St. Rose and Derrick James were dismissed from the action.  Therefore, Monrose Loctar is the only remaining plaintiff and the only potential class representative in this action.

purchase price (initial or paid)." SOF at ¶ 2. Loctar does not have any documents or other evidence of his July 2015 purchase from Spartan or any purchases he made from Heavy Materials or Mark 21. SOF at ¶¶ 3-4.

Loctar confirmed that he considers both price and service when purchasing ready-mix, but "price is always better" than service, meaning price is the more important factor. SOF at ¶ 5. He testified that during the class period, from December 2013 to October 2015, he observed the price of ready-mix concrete "jump up" from "about . . .130-something" "to a hundred and seventy-something". SOF at ¶ 6; D.E. 37 at ¶ 12(b) (defining class period). Although he could not recall the price he paid for the ready-mix he purchased from Spartan in July 2015, he thought the price was high and he believed the reason the price was so high was because Spartan was the only concrete company on island at that time. SOF at ¶ 7. Later in his testimony, after being shown his response to Spartan's Interrogatory 2, wherein Loctar responded he paid One Hundred Seventy-One Dollars ($171.00) per cubic yard for the ready-mix he purchased from Spartan on July 7, 2015, Loctar said that his written response to Spartan's Interrogatory seemed accurate. SOF at ¶ 8. Loctar again confirmed that when he purchased ready-mix from Spartan in July 2015, he thought the price was high. SOF at ¶ 9.

In addition to observing a jump in price of ready-mix concrete from approximately One Hundred Thirty Dollars ($130.00) per yard to One Hundred Seventy Dollars ($170.00) per yard in 2015, Loctar also admitted that *before* he purchased ready-mix from Spartan in July 2015, he had heard of an agreement between Spartan and Heavy Materials wherein "Spartan bought Heavy Materials, shut them down, and then jack up the price on us." SOF at ¶ 10. Loctar further elaborated, "He bought his competition." SOF at ¶ 11. Loctar and other purchasers of ready-mix who were also friends of Loctar's complained amongst themselves about the price of ready-mix

and about the alleged agreement between Spartan and Heavy Materials.  SOF at ¶ 12.  "[W]e complain all the time about the price", Loctar testified.  SOF at ¶ 13.  One of those other purchasers was former plaintiff Derrick James, who has been dismissed from this action.  SOF at ¶ 14.  Loctar and James discussed the alleged agreement between Spartan and Heavy Materials and the price of ready-mix concrete.  SOF at ¶ 15.

The First Amended Complaint, which proposes to bring a class action, alleges that in December 2013, Spartan and Heavy Materials, both retail sellers of ready-mix concrete, entered into two (2) agreements (the Requirements Supply Agreement and the Assignment of Lease) and that these agreements violated antitrust law.  D.E. 37 at ¶¶ 13; 19.  Plaintiff alleges that during that period he, and the members of the proposed class, paid artificially inflated prices for ready-mix concrete and suffered financial injury.  D.E. 37 at ¶¶ 2; 12(a) & (b).

Counts One and Two of the First Amended Complaint claim that Defendants violated the Sherman and Clayton Acts and the Virgin Islands Anti-Monopoly Law.  Paragraph 12(b) of the First Amended Complaint defines the class period as between December 2013 and October 2015.  Counts One and Two are subject to a four (4) year statute of limitations.[2]

"[A]n antitrust cause of action generally 'accrues . . . when a defendant commits an act that injures a plaintiff's business.'"  *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105–06 (3d Cir. 2010)).  "A plaintiff suffers antitrust injury by purchasing a product whose price was anticompetitively fixed."  *Id.* (citing *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189 (1997)).

---

[2] The statutory limitations period applicable to Plaintiff's federal antitrust claims is four (4) years and the separate limitations period applicable to Plaintiff's Virgin Islands law claims is also four (4) years.  *See* 15 U.S.C. § 15b and 11 V.I.C. § 1507.  Accordingly, the references herein to "statute of limitations" encompass both the federal and the Virgin Islands statutory limitation periods.

The original Complaint was filed on December 19, 2019, more than four (4) years after the close of the class period and nearly four and a half (4½) years from Loctar's purchase of ready-mix from Spartan in July 2015. Additionally, this was also more than four (4) years after Loctar had heard about an agreement between Spartan and Heavy Materials and had discussed it and the high prices of ready-mix with others. Accordingly, there is no question that this action was filed outside the statute of limitations.

Summary judgment must be granted in favor of Spartan and Mosler because the entire First Amended Complaint is barred by the four (4) year statute of limitations.[3]

## II.   The Facts Do Not Support Tolling the Statute of Limitations Under the Doctrine of Fraudulent Concealment.

The First Amended Complaint seeks to avoid the statute of limitations bar by claiming that the equitable doctrine of fraudulent concealment applies. "[E]quitable tolling is an extraordinary remedy which should be extended only sparingly." *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 161 (3d Cir. 2016), *as amended* (Feb. 24, 2016) (quoting *Hedges v. United States,* 404 F.3d 744, 751 (3d Cir. 2005) and citing *Wallace v. Kato,* 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.")).

---

[3] The First Amended Complaint consists of three (3) counts: Violation of the Sherman & Clayton Antitrust Acts (Count I); Violation of the U.S. Virgin Islands Anti-Monopoly Law (Count II); and V.I. Common Law "Participating Agent" Liability (Count III). Count III, however, is a theory of liability, not an independent cause of action. Count III alleges that Mosler is liable under Virgin Islands common law for violation of the Virgin Islands Anti-Monopoly Act. Count II already alleges that "Defendants", including Mosler, violated the Virgin Islands Anti-Monopoly Act. Therefore, Count III is duplicative of Count II. Moreover, in the companion Superior Court action, Judge Molloy found that the Virgin Islands Anti-Monopoly Law is different than the federal antitrust statute in that the Virgin Islands Anti-Monopoly Law does not contain any provision for liability of directors and agents of a corporation. SOF at ¶ 16. Therefore, if summary judgment is granted with respect to Count II, Count III will fail because it is merely Plaintiff's theory of liability that Mosler is liable under Count II.

To demonstrate fraudulent concealment, Plaintiff "must come forward with evidence to support each of" the following three (3) elements:

(1) fraudulent concealment;

(2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and

(3) that such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff.

*In re Aspartame Antitrust Litig.*, 416 F. App'x at 211 (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002) and citing *Forbes v. Eagleson,* 228 F.3d 471, 487 (3d Cir. 2000) ("Absent evidence to support these findings there is no genuine dispute of material fact on the issue and the defendants are entitled to summary judgment.")). "If a plaintiff with an otherwise time-barred claim has not presented sufficient evidence of even one of the three elements, summary judgment may be entered for the defendant." *Cunningham*, 814 F.3d at 164.[4]

---

[4] The Supreme Court of the Virgin Islands has not addressed or adopted the doctrine of fraudulent concealment in the context of antitrust claims. *See Gerald v. R.J. Reynolds Tobacco Co*., 67 V.I. 441, 462 (Super. Ct. 2017) (noting that "[w]ith respect to the equitable tolling doctrine for fraudulent concealment, the concept is not provided for in the Virgin Islands Code and it has yet to be addressed by the Supreme Court of the Virgin Islands."); *see also Williams v. Juan F. Luis Hosp. Through Gov't of the Virgin Islands* (Super. Ct. 2019) (discussing the fraudulent concealment doctrine in the context of the Medical Malpractice Act, codified as 27 V.I.C. § 166d). In a 2017 opinion, however, the Superior Court of the Virgin Islands adopted an iteration of the fraudulent concealment tolling doctrine after conducting a *Banks* analysis. *Gerald v. R.J. Reynolds Tobacco Co.*, 68 V.I. 3, 136 (Super. Ct. 2017). The Superior Court concluded that "to toll the statute of limitations for fraudulent concealment, the plaintiff must allege and prove:

(1) that the defendant affirmatively concealed, or failed to disclose despite a duty to do so, material facts critical to plaintiff's cause of action;

(2) that the defendant knew or had reason to know that the material fact had been concealed or suppressed;

(3) that the defendant's conduct prevented plaintiff from discovering of the nature of the claim within the limitations period; and

(4) that the plaintiff could not have discovered sufficient facts to identify the particular cause of action despite reasonable care and diligence.

*Gerald*, 67 V.I. at 466. Given that the elements of fraudulent concealment adopted by the Virgin Islands Superior Court are aligned with, and do not differ from the elements of fraudulent concealment applied by federal courts in any way relevant to the instant matter, the analysis set forth *infra* applies equally to Plaintiff's claims under federal antitrust law and his claim under the Virgin Islands Anti-Monopoly Act.

### A.  Plaintiff Cannot Demonstrate First Element of Fraudulent Concealment.

To allege the first element, fraudulent concealment, Plaintiff must show that Defendants "fraudulently concealed facts that are the basis of plaintiff's claim . . ." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 483 (W.D. Pa. 1999); *see also Cetel v. Kirwan Fin. Grp., Inc.,* 460 F.3d 494, 509 (3d Cir. 2006)) (describing first element of fraudulent concealment as a showing "that the defendant actively misled the plaintiff . . .").  While there is universal agreement that mere silence or failure to disclose does not constitute fraudulent concealment, circuits are split, and district courts within circuits differ, on what evidence is required to satisfy the first element of fraudulent concealment.

With respect to the first element, Plaintiff attempts to meet the first element in two (2) ways: First, he claims the conspiracy is "self-concealing." Second, he claims Defendants failed to disclose or took affirmative steps to conceal the alleged conspiracy from putative class members, purchasers of ready-mix concrete from December 2013 to October 2015.  *See* D.E. 37 at ¶¶ 63; 66-80.

Plaintiff cannot demonstrate the first element of fraudulent concealment under either standard.  Accordingly, summary judgment must be entered in favor of Defendants.

### 1.  Allegation of a "Self-Concealing" Conspiracy Does Not Satisfy the First Element of Fraudulent Concealment.

Plaintiff alleges the conspiracy is "self-concealing."  D.E. 34 at 2; D.E. 36 at 5.  The concept of a self-concealing conspiracy stems from two (2) United States Supreme Court opinions issued in the 1870s.  In *Bailey v. Glover*, 88 U.S. 342, 349–50 (1874), the Supreme Court held that, under a federal bankruptcy statute, the limitations period does not begin to run until the fraud is discovered by, or becomes known to, the plaintiff "when there has been no negligence or laches

Case: 3:19-cv-00117-RAM-RM   Document #: 102   Filed: 04/11/22   Page 7 of 21

*St. Rose v. Heavy Materials, LLC et al.*                                              *Case No. 3:19-cv-117*
Memorandum in Support of Motion for Summary Judgment                                          Page 7

on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or *is of such character as to conceal itself . . . .*"  Not long after *Bailey*, however, the Supreme Court clarified that "[c]oncealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Wood v. Carpenter*, 101 U.S. 135, 143 (1879).

What exactly a self-concealing conspiracy is, "particularly one that involves price-fixing, remains nebulous." *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943 DRD, 2011 WL 5008090, at *21 (D.N.J. Oct. 20, 2011). One district court has described the self-concealing conspiracy as allowing a court to deem the first element of fraudulent concealment to be "automatically satisfied" and to excuse a plaintiff from proving "affirmative acts of concealment when the conspiracy itself could not survive in the absence of secrecy." *In re Aspartame Antitrust Litig.*, No. CIV.A.2:06-CV-1732, 2007 WL 5215231, at *4 (E.D. Pa. Jan. 18, 2007).

Courts universally agree that mere silence or failure to disclose is not sufficient to demonstrate the first element of fraudulent concealment. Beyond that rule, however, there is a split of authority among federal courts of appeal regarding evidence required to demonstrate the first element of fraudulent concealment in the antitrust context. *See* Amber Davis-Tanner, *Antitrust Law-Affirmative Acts and Antitrust-the Need for A Consistent Tolling Standard in Cases of Fraudulent Concealment*, 33 U. ARK. LITTLE ROCK L. REV. 331, 332, 340-341 (2011) (explaining that "[t]here is a split of authority among the federal courts of appeals concerning the first element of fraudulent concealment when deciding antitrust cases" but stating that "all circuits that have discussed affirmative actions have indicated that neither denial of wrongdoing nor silence alone constitutes an affirmative act.").

"Where a conspiracy is the underlying cause of action, courts have applied three different

standards for determining whether this affirmative act element is satisfied." *In re Fasteners Antitrust Litig.*, Civ. No. 08-1912, 2012 WL 3194377, at *1 (E.D. Pa. Aug. 6, 2012). "The strictest approach requires plaintiffs to demonstrate an affirmative act of concealment that is extrinsic to the conspiracy." *Id*. This is also known as the "separate-and-apart" standard. The "intermediate standard" "require[s] affirmative acts, but allow[s] plaintiffs to rely on acts of concealment involved in the antitrust violation itself." *Id*. The third approach, which is the most lenient, allows plaintiffs to "sustain their burden by alleging that the antitrust conspiracy is self-concealing." *Id*.

The Third Circuit Court of Appeals has not yet established which approach is applicable in this circuit. *In re Fasteners Antitrust Litig.*, 2012 WL 3194377, at *1 (stating that "[t]he Third Circuit has not spoken on this issue."). Courts within the Third Circuit have differed as to whether the fraudulent concealment element can be satisfied by alleging self-concealing conspiracy. *See In re Mercedes-Benz Anti-Tr. Litig.*, 157 F. Supp. 2d 355, 370 (D.N.J. 2001) (stating that "[d]istrict courts in this Circuit have diverged. Some recognize the self-concealing conspiracy concept as sufficient to support a claim of fraudulent concealment. Others have required affirmative acts independent of the alleged conspiracy before invoking the doctrine.") (citing *Pennsylvania v. Milk Indus. Mgmt. Corp.,* 812 F.Supp. 500 (E.D. Pa. 1992); *Bethlehem Steel Corp. v. Fischbach & Moore, Inc.,* 641 F. Supp. 271, 273–74 (E.D. Pa. 1986); *Pennsylvania v. Lake Asphalt & Petroleum Co. of Pa.,* 610 F. Supp. 885, 888 (M.D. Pa. 1985)). A majority of the federal courts of appeal

that have addressed the issue have applied the intermediate standard. The Fourth[5], Fifth[6], Sixth[7], and Ninth[8] Circuits have applied the intermediate standard and the Tenth Circuit applies the even more strict standard which requires affirmative acts extrinsic to the conspiracy.[9] The Second Circuit alone adopted the most lenient self-concealing standard in the specific context of bid-rigging.[10]

Allowing Plaintiff to proceed on a theory that the alleged conspiracy is self-concealing would effectively eliminate the statute of limitations. *See In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1160 (D. Kan. 2012) (agreeing that "application of the self-concealing standard in

---

[5] *See Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 123 (4th Cir. 1995) (finding that "price-fixing is not inevitably deceptive or concealing" and therefore application of the self-concealing standard in that case would be improper" and concluding that the plaintiff "must provide affirmative acts of concealment by the dairies.").

[6] *State of Tex. v. Allan Const. Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988) (stating that "we do not agree with the Second Circuit that antitrust violations arising from a bid-rigging conspiracy are always self-concealing" and that "we cannot conclude that Congress, in writing the Clayton Act's four-year statute of limitations, could have intended for the fraudulent concealment doctrine to apply to every price-fixing case. Hence, we reject the State's contention that because the bid-rigging conspiracy was inherently self-concealing, it need not prove affirmative acts of concealment.").

[7] *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (stating that "we agree with Judge McCree's rationale in *Gaetzi* that a plaintiff should be required to prove affirmative acts of concealment, particularly in light of the strong policy in favor of statutes of limitations.").

[8] *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 505 (9th Cir. 1988) (stating that "Conmar claims that Mitsui's acts constitute fraudulent concealment because they were by nature self-concealing. We require none. A plaintiff alleging fraudulent concealment must establish that its failure to have notice of its claim was the result of affirmative conduct by the defendant."); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1196 (N.D. Cal. 2015) ("There is no dispute that the "self-concealing" standard is not the law of this circuit.").

[9] *State of Colo. ex rel. Colorado Atty. Gen. v. W. Paving Const. Co.*, 841 F.2d 1025, 1026 (10th Cir. 1988) (per curiam opinion affirming *State of Colo. ex rel. Woodard v. W. Paving Const. Co.*, 630 F. Supp. 206 (D. Colo. 1986), requiring a plaintiff to show separate acts of concealment to toll the statute of limitations under the Clayton Act); *see also Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992) (finding that fraudulent concealment as applied to ERISA's statute of limitations can include self-concealing act but also stating that "[t]here must be actual concealment—i.e., 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" (quoting *Wood,* 101 U.S. (11 Otto) at 143)).

[10] *See State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1085 (2d Cir. 1988) (stating that "[a]s indicated in *Bailey v. Glover,* the plaintiff may prove the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing" and finding that plaintiff "sufficiently proved the concealment by the defendants of the conspiracies alleged in the complaint, both because the bid-rigging was self-concealing and because the Amfar defendants' affirmative acts of concealment were properly admissible against all of the defendants."); *see also J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1253 (1st Cir. 1996) (in context of ERISA claim, stating that fraudulent concealment doctrine as applied in the First Circuit includes both self-concealing wrongs and 'active concealment' that is separate from the underlying wrongdoing.").

Case: 3:19-cv-00117-RAM-RM   Document #: 102   Filed: 04/11/22   Page 10 of 21

*St. Rose v. Heavy Materials, LLC et al.*                                        *Case No. 3:19-cv-117*
Memorandum in Support of Motion for Summary Judgment                              Page 10

all price-fixing antitrust conspiracy cases would effectively swallow the rule and eviscerate the statute of limitations in such cases."). "Courts that use a self-concealing standard do not analyze the first element of fraudulent concealment at all." Davis-Tanner, 33 U. ARK. LITTLE ROCK L. REV. at 347–48 (2011) (citing *In re Nine W. Shoes Antitrust Litig.*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000)).

If the statute of limitations could be tolled on a mere showing "of secrecy, silence, concealment or other clandestine activities by the alleged conspirators", then "the 4-year limitation period Congress adopted in 1955 would be of no practical significance for antitrust conspiracies, most of which obviously operate in clandestine fashion, with the participants seeking to keep their covert machinations hidden from public view." Charles Evan Stewart, *The Government Suspension Provision of the Clayton Act's Statute of Limitations: For Whom Does It Toll?*, 60 ST. JOHN'S L. REV. 70, 88 n.69 (1985); *see also* Davis-Tanner, 33 U. ARK. LITTLE ROCK L. REV. at 346 (quoting Richard L. Marcus, *Fraudulent Concealment in Federal Court: Toward a More Disparate Standard?*, 71 GEO. L.J. 829, 872 (1983)) ("allowing the wrongdoing itself to toll the statute of limitations" is tantamount to "the abandonment of the concealment prong", which "'substantially undermines the interest in limiting the period during which a defendant may be sued.'"). The reasoning exemplified in the above authorities demonstrates why the majority of federal courts of appeal have insisted that something more than an alleged self-concealing conspiracy be shown to toll the statute of limitations.

Moreover, even if the Third Circuit determined that an allegation of a self-concealing conspiracy could satisfy the fraudulent concealment element, which it has not done, the nature of the ready-mix market demonstrates that a self-concealing conspiracy could not have existed here. "[W]hether a price-fixing conspiracy is self-concealing may depend on the industry involved."

D.E. 36 at 5.  "In a competitive, well-regulated industry it will often be the case that a price-fixing conspiracy, if not concealed, would immediately fail because of governmental or private legal action." *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *22 (quoting *In re Publ'n Paper Antitrust Litig.*, No. 304MD1631SRU, 2005 WL 2175139 (D. Conn. Sept. 7, 2005)).  In such an industry, "any announcement of a price increase will carry with it an implicit statement that the price increase is legitimate, i.e., the result of competitive forces, not collusion." *Id*.  By contrast, in an industry "in which the participants are aware of collusion but it is not stopped because of indifference, fear, or because the perpetrators are exempt from, or beyond the reach of, antitrust laws . . . the defendants' announcement of a price increase will not carry with it any implied certification of legitimacy, and so, absent additional circumstances, will not be self-concealing." *Id*.

Here, the alleged conspiracy cannot be self-concealing because Loctar testified that he and others were aware of alleged collusion between Spartan and Heavy Materials but they did nothing to stop the alleged conspiracy until well after the limitations period expired.  Loctar testified that he observed the price of ready-mix "jump up" from "about . . .130-something" "to a hundred and seventy-something", that he thought the price of ready-mix was high when he purchased ready-mix from Spartan in July 2015, that before he purchased ready-mix from Spartan in July 2015, he had heard of an agreement between Spartan and Heavy Materials with respect to the price of ready-mix, and that Loctar and other purchasers of ready-mix complained about the prices of ready-mix and discussed the agreement between Spartan and Heavy Materials. SOF at ¶¶ 6-15.  Additionally, neither Loctar nor any person he spoke with took any action or made any complaint about the increase in the price of ready-mix.  SOF at ¶¶ 18-19.  Loctar cannot credibly allege that he and other customers were aware of an agreement between Spartan and Heavy Materials with respect

to price but, at the same time, they thought the price increases were the result of legitimate market forces.  Accordingly, the alleged conspiracy cannot be self-concealing.

As set forth above, Plaintiff cannot rely on an alleged self-concealing conspiracy to satisfy the first element of fraudulent concealment.

### 2.   Silence or Failure to Disclose Does Not Constitute Fraudulent Concealment.

The fraudulent concealment allegations of the First Amended Complaint merely amount to a claim that Defendants did not inform Plaintiff and members of the proposed class of the alleged anticompetitive agreement.  The opening lines of the First Amended Complaint's fraudulent concealment allegations allege that Defendants did not disclose "the existence of their unlawful combination and conspiracy" to Plaintiff and other members of the putative class and that Defendants "intended that their communications with each other and their resulting actions be kept secret from Plaintiffs and other class members."  D.E. 37 at ¶ 63.

Something more than silence or generalized allegations is required to allege Defendants concealed something from Plaintiff and did so fraudulently.  *Robinson v. Jackson Hewitt, Inc.*, No. 19-9066, 2019 WL 5617512, at *5 (D.N.J. Oct. 31, 2019) (finding that plaintiffs' "argument that Defendants did not "inform" them of the conspiracy lacks merit.") (citing *Gutierrez v. TD Bank*, Civ. No. 11-5533, 2012 WL 272807, at *9 (D.N.J. Jan. 27, 2012) (noting "inaction or silence" or "generalized allegations" that defendant "actively misled" plaintiffs are insufficient to show fraudulent concealment).  A claim of fraudulent concealment must consist of "more than an alleged failure to own up to illegal conduct"; otherwise the statute of limitations would be rendered meaningless.  *See Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987) (finding that "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively

nullify the statute of limitations in these cases"). "[T]he mere failure by defendant to disclose to

a plaintiff the existence of facts does not establish the defense." *Bethlehem Steel Corp. v.*

*Fischbach & Moore, Inc.*, 641 F. Supp. 271, 274 (E.D. Pa. 1986).

"Silence can constitute fraud only where there is an affirmative duty to disclose because of

a fiduciary relationship between the parties or a similar relationship of trust and confidence." *Mest*

*v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006) (applying Pennsylvania law); *see also Jeter v.*

*Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004) ("Under Pennsylvania

law, a party is liable for fraudulent concealment only when it had a duty to speak in the first

place. Such duty generally arises only when there is a special relationship between the parties.")

(citing *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 611–612 (3d Cir. 1995));

*McCracken v. R.J. Reynolds Tobacco*, 821 F. App'x 122, 126 (3d Cir. 2020) (stating that the

plaintiff "could not state a fraudulent concealment claim because he has never identified a

relationship between the parties that gave rise to a duty to speak."); *Gleason v. Norwest Mortg.,*

*Inc.*, 243 F.3d 130, 145 (3d Cir. 2001), *abrogated on other grounds* (noting that "[a] party has no

duty to disclose information to another party in a business transaction unless a fiduciary

relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one

party "expressly reposes a trust and confidence in the other.") (applying New Jersey law) (quoting

*Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981)); *Leonard v. City of*

*Pittsburgh*, 570 F. App'x 241, 245–46 (3d Cir. 2014) (explaining that silence can constitute

fraudulent concealment "only where there is an affirmative duty to disclose because of a fiduciary

relationship between the parties or a similar relationship of trust and confidence.") (quoting

*Mest,* 449 F.3d at 517); *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 788

(3d Cir. 2001) (discussing the application of fraudulent concealment to ERISA claim and stating

Case: 3:19-cv-00117-RAM-RM   Document #: 102   Filed: 04/11/22   Page 14 of 21

*St. Rose v. Heavy Materials, LLC et al.*                                      *Case No. 3:19-cv-117*
Memorandum in Support of Motion for Summary Judgment                                    Page 14

that "there must be actual concealment,—i.e., some trick or contrivance intended to exclude suspicion and prevent injury.") (quoting *Larson v. Northrop Corp.,* 21 F.3d 1164, 1173 (D.C. Cir. 1994)).

Here, there was no fiduciary or other relationship between Defendants and Plaintiff and neither Spartan nor Mosler had any duty to disclose their business dealings to Plaintiff. Accordingly, the allegation that Defendants failed to inform Plaintiff of an alleged conspiracy or the goings on of Spartan and Heavy Materials does not constitute fraudulent concealment.

### 3.   Plaintiff Cannot Otherwise Demonstrate Fraudulent Concealment.

In the alternative, Plaintiff claims that the first element of fraudulent concealment is met through alleged affirmative acts by Defendants to conceal the alleged conspiracy.  D.E. 34 at 2. The alleged affirmative acts, however, fail to demonstrate fraudulent concealment.

The First Amended Complaint alleges that "Defendants told the public that [the Requirements Supply Agreement and the Assignment of Lease] were not linked" and that "[t]he continued insistence that the contracts were not linked was the lynchpin that permitted Heavy Materials and Spartan to continue to charge supra-competitive prices for ready-mix concrete." D.E. 37 at ¶¶ 66; 73.  During his deposition, however, Loctar, the only Plaintiff who wishes to continue to prosecute this action, testified that he does not know what the Requirements Supply Agreement is.  SOF at ¶ 17.  Given that Loctar testified under oath that he does not know what the Requirements Supply Agreement is, any allegations regarding the linkage of the Requirements Supply Agreement with another agreement or that the denial of such a linkage being "the lynchpin" of the alleged conspiracy is contradicted by Loctar's testimony.

The First Amended Complaint further alleges that certain actions were hidden from prospective purchasers of Heavy Materials and/or Spartan.  *See* D.E. 37 at ¶¶ 68-69 ("[a]fter the

Case: 3:19-cv-00117-RAM-RM   Document #: 102   Filed: 04/11/22   Page 15 of 21

*St. Rose v. Heavy Materials, LLC et al.*                                              *Case No. 3:19-cv-117*
Memorandum in Support of Motion for Summary Judgment                              Page 15

unlawful agreement was perfected, the owners of Heavy Materials advertised to potential buyers that Spartan had unilaterally decided to stop manufacturing and selling ready-mix concrete on St. Thomas, but that representation was not accurate"; "[t]he owners purposefully deceived potential buyers of the true nature of the agreement with Spartan."). These allegations are irrelevant because prospective purchasers of Heavy Materials and/or Spartan are not Plaintiffs and are not included in the proposed class. *See* D.E. 37 at ¶¶ 12(a) & (b) (defining class as "all persons in the United States Virgin Islands who purchased ready-mix or aggregate directly from any defendant at any time during the Class Period." and defining class period as "the period from at least December 2013 to October 2015.").

The First Amended Complaint also refers to internal communications made within Heavy Materials. It alleges Heavy Materials manager Kurt Nose drafted an email to a customer regarding the agreements but did not send it. D.E. 37 at ¶ 70. The First Amended Complaint also references an email from the General Manager of Heavy Materials' St. Croix location to Doug Gurlea, principal of Heavy Materials, which states: "Doug don't forget to send me the Plant Closing Act and the Agreement with Mosler. Don't worry, I will keep it hidden from everyone." D.E. 37 at ¶ 72. Neither of these communications, made by Heavy Materials agents within Heavy Materials, constitute affirmative acts of concealment by Spartan. First, these are internal communications of Heavy Materials, which is no longer a party to this action. Second, the communications referenced are internal company communications which were made by Heavy Materials agents to other Heavy Materials agents. Accordingly, they cannot be acts intended to conceal anything from Plaintiff because the communications were not directed at Plaintiff. Lastly, Spartan did not have any duty to disclose Heavy Materials' confidential business communications to Plaintiff.

**B. Plaintiff Cannot Meet Second Element of Fraudulent Concealment Because Loctar was Aware of the Basis for His Cause of Action No Later than July 2015.**

There is no evidence to support the second element of fraudulent concealment, that Loctar failed to discover his cause of action despite alleged fraudulent concealment, because Loctar knew of the factual basis for his cause of action no later than July 2015.

"Any fact that should excite [the plaintiff's] suspicion is the same as actual knowledge of his entire claim." *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1179 (3d Cir. 1993) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (quoting *Wood v. Carpenter*, 101 U.S. 135 (1879)). Additionally, "even if a limitation period is tolled by virtue of fraudulent concealment, it will begin 'to run when the injured party knows or reasonably should know of his injury and its cause.'" *Danysh v. Eli Lilly & Co.*, 461 F. App'x 75, 77 (3d Cir. 2012) (quoting *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005)).

Before he purchased ready-mix from Spartan in July 2015, Loctar had heard of an agreement between Spartan and Heavy Materials wherein "Spartan bought Heavy Materials, shut them down, and then jack up the price on us." SOF at ¶ 10. Loctar further elaborated, "He bought his competition." SOF at ¶ 11. Loctar and other purchasers of ready-mix who were also friends of Loctar's complained amongst themselves about the price of ready-mix and about the alleged agreement between Spartan and Heavy Materials. SOF at ¶ 12. One of those other purchasers was former plaintiff Derrick James. SOF at ¶ 14. Loctar and James discussed the alleged agreement between Spartan and Heavy Materials and the price of ready-mix concrete. SOF at ¶ 15. Accordingly, no later than July 2015, Loctar knew of the factual basis for his claims, more than four (4) years before he commenced this action. Therefore, his claim is barred by the statute of limitations.

### C.  Loctar Cannot Demonstrate Third Element of Fraudulent Concealment Because He Failed to Exercise Any Due Care.

There is no evidence to support the third element, that Loctar failed to discover his cause of action notwithstanding the exercise of due care.  Loctar had knowledge of the factual basis of his claims no later than July 2015 and, despite what he knew, he failed to take any steps whatsoever to investigate his cause of action.

To take advantage of the fraudulent concealment doctrine, "the exercise of due diligence must be shown in the antitrust context."  *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1179.  "To demonstrate reasonable diligence [which means here, as noted below, to investigate possible claims], a plaintiff must 'establish[ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'"  *Cunningham*, 814 F.3d at 161 (quoting *Mest,* 449 F.3d at 511).

Some courts break the due diligence inquiry into two (2) subparts: "(1) whether the plaintiffs knew or should have known of possibility of fraud because 'there were sufficient storm warnings on the horizon,' and, (2) whether, if there were such warnings, plaintiffs exercised due diligence to recognize them and to determine their origin and the extent of the fraud."  *In re Elec. Carbon Prod. Antitrust Litig.*, 333 F. Supp. 2d 303, 317 (D.N.J. 2004) (citing *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251-52 (3d Cir. 2001)).  "[T]he clock starts when plaintiffs 'should have discovered the general fraudulent scheme.'"  *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002)).  "Plaintiffs cannot avoid the time bar simply by claiming they lacked

Case: 3:19-cv-00117-RAM-RM   Document #: 102   Filed: 04/11/22   Page 18 of 21

*St. Rose v. Heavy Materials, LLC et al.*                                           *Case No. 3:19-cv-117*
Memorandum in Support of Motion for Summary Judgment                                          Page 18

knowledge 'of the details or 'narrow aspects' of the alleged fraud." *Id*. (quoting *In re NAHC, Inc.*

*Sec. Litig.*, 306 F.3d at 1326).

"Generally, a plaintiff who fails to allege any due diligence is virtually foreclosed from

invoking the fraudulent concealment doctrine." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735,

749 (E.D. Pa. 2014) (quoting *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-02002, 2011

WL 5980001, at *14 (E.D. Pa. Nov. 30, 2011)); *see also Alaska Elec. Pension Fund v. Pharmacia*

*Corp.*, 554 F.3d 342, 347 (3d Cir. 2009) ("Plaintiffs do not contend that they 'exercised reasonable

due diligence and yet were unable to discover their injuries.'  Thus, if we find storm warnings of

fraud, plaintiffs' claims are untimely.") (quoting *Mathews*, 260 F.3d at 252).  "A plaintiff who

neglects to 'take reasonable measures to uncover the existence of injury' is not entitled to the

benefit of the fraudulent concealment doctrine." *In re Aspartame Antitrust Litig.*, 416 F. App'x at

211 (quoting *Forbes*, 228 F.3d at 486).

Here, the alleged increase in the price of ready-mix, the discussions among purchasers of

ready-mix of an agreement between Spartan and Heavy Materials, and the proposed counterclaim

filed by Argos in *Spartan v. Argos* were loud and clear storm warnings which "certainly required

plaintiffs to do something." *In re Aspartame Antitrust Litig.*, 416 F. App'x at 212; *see also* Civil

No. 3:15-cv-00004, D.E. 115-1.

Moreover, no later than July 7, 2015, Loctar had actual knowledge of all the facts necessary

to bring the claims alleged in the First Amended Complaint.  Despite his knowledge, however,

Loctar failed to undertake any kind of investigation until sometime after he was approached by his

counsel's client about becoming a plaintiff in the instant lawsuit.  SOF at ¶ 20.  Loctar's inaction

was not reasonable diligence, or any kind of diligence at all, in the face of his observation of high

prices for ready-mix, his stated knowledge of an agreement between Spartan and Heavy Materials

with respect to the price of ready-mix, and the discussions he had with other purchasers of ready-mix during which the purchasers complained about the prices of ready-mix and discussed their understanding that Spartan had "jacked up the price on us" of ready-mix concrete because Spartan bought its competition, Heavy Materials. *See Cunningham*, 814 F.3d at 162 (finding that plaintiffs' inaction did not constitute reasonable diligence where plaintiffs where "had all the facts necessary to develop their claims under RESPA" years prior to filing suit "[y]et they failed to take any steps to investigate during the approximately four-year period between the time of the closing and the time that they were approached by counsel.").

Moreover, Loctar's discussion with other purchasers of ready-mix regarding the increase of the price of ready-mix and of an agreement between Spartan and Heavy Materials demonstrates that not only Loctar, but other purchasers of ready mix were aware of an increase in the price of ready-mix and of an agreement between Spartan and Heavy Materials. Accordingly, Loctar knew of his cause of action by no later than July 2015 when he purchased ready-mix from Spartan. Therefore, this action is barred by the statute of limitations.

## III.   Conclusion: Summary Judgment Must be Granted in Favor of Spartan and Mosler Because Plaintiff's Complaint is Barred by Statute of Limitations.

The undisputed evidence demonstrates that Loctar knew of the facts underlying his claim no later than July 2015. This action, however, was not filed until December 2019, more than four (4) years later. Loctar attempts to avoid the four (4) year statute of limitations by claiming that the fraudulent concealment tolling doctrine excuses his failure to file within the limitations period. To survive summary judgment, however, Loctar must prove each of the three (3) elements: (1) fraudulent concealment; (2) failure on the part of the plaintiff to discover his cause of action

notwithstanding such concealment; and (3) that such failure to discover occurred [notwithstanding]

the exercise of due care on the part of the plaintiff.

With respect to the first element, there is no evidence of any fraudulent concealment by

Spartan or Mosler.  Even if there had been such concealment, however, Loctar is unable to satisfy

the second element because he had discovered the basis for his claims no later than July 2015,

more than four (4) years before this action was filed.  Moreover, there is no dispute that Loctar

failed to exercise any diligence whatsoever.  Accordingly, summary judgment must be entered in

favor of Spartan and Mosler and this action must be dismissed.

Respectfully,


Dated: April 11, 2022                    */s/ Christopher Allen Kroblin*
                                         **CHRISTOPHER ALLEN KROBLIN, ESQ.**
                                         **MARJORIE WHALEN, ESQ.**
                                         V.I. Bar Nos. 966 & R2019
                                         KELLERHALS FERGUSON KROBLIN PLLC
                                         Royal Palms Professional Building
                                         9053 Estate Thomas, Suite 101
                                         St. Thomas, U.S.V.I. 00802
                                         Telephone: (340) 779-2564
                                         Facsimile: (888) 316-9269
                                         Email:  ckroblin@kellfer.com
                                                 mwhalen@kellfer.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 11th day of April, 2022, a true and exact copy of the

foregoing **Memorandum in Support of Motion for Summary Judgment** was electronically

filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing (NEF) to the following:

Korey A. Nelson, Esq.
Warren T. Burns, Esq.
Daniel Charest, Esq.
Rick Yelton, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
*knelson@burnscharest.com*
*wburns@burnscharest.com*
*dcharest@burnscharest.com*
*ryelton@burnscharest.com*

J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 890
St. Thomas, V.I. 00804
*pate@sunlawvi.com*
*sunlawvi@gmail.com*                                       */s/ Christopher Allen Kroblin*